ALMOND H. GOULD, and another,

*vs.*

BOSTON EXCELSIOR COMPANY.

Piscataquis.   Opinion January 5, 1898.

*Incomplete Contracts.   Parol Evidence.   Logs.   Scaler.*

When the written memorandum of an agreement for the cutting, hauling and driving logs or wood is silent as to the scale and the scaler, and does not import upon its face to contain all the stipulations of the parties as to the subject matter,—oral evidence may be received of an additional verbal stipulation as to the scale or the scaler.

Such a stipulation does not add to, nor subtract from, nor in any way vary the liability of either party under the written memorandum.

ON EXCEPTIONS BY DEFENDANT.

This was an action of assumpsit to recover the sum of $1,821.47 for driving 3235 cords of poplar from Ship Pond Stream to Milo boom, at 75 cents per cord.   ·

Plea, the general issue.

The plaintiffs introduced in evidence a written contract signed by themselves, also a written contract signed by the defendant's agent, of the following tenor:—

BOSTON EXCELSIOR COMPANY.

Manufacturers and dealers in Excelsior and Upholsterers' Supplies.

Julian D'Este, Treas.                    26 Canal Street.

Boston, Mass.

Sebec, Me., Mar. 29, '94.

We the undersigned, do hereby agree to take the poplar cut and peeled for the Boston Excelsior by Hoxie Bros. now on landing at Ship Pond Stream and drive and deliver the same in their boom at their dam in Milo Village, Me., in the spring of 1894, for 75 cts. per cord.

We do further agree to deliver all poplar delivered in booms to the Boston Excelsior Co. from other parties on Sebec Lake to the Boston Excelsior Co. at their boom in Milo Village, Me. in the spring of 1894, for 25 cts. per cord.

We further agree to deliver and yard on the landing at Ship Pond Stream (what poplar was left in the woods peeled by Hoxie Bros.) during the summer of 1894, for $1.00 per cord.

We also agree to cut and peel 2,000 (two thousand) cords of poplar, if there be that amount, on land known as the Quarry Tract owned by S. & J. Adams of Bangor, Me., and drive and deliver the same to the dam of the Boston Excelsior Co. in Milo Village, Maine, in the spring of 1895—cutting, peeling and delivering the same at landing on Ship Pond Stream, for $1.50 per cord, and 75 cents per cord for driving the same to the dam of the Boston Excelsior in Milo Village, Maine.

A. H. GOULD.
J. C. DEAN.

BOSTON EXCELSIOR COMPANY.

Manufacturers and dealers in Excelsior and Upholsterers' Supplies.

Julian D'Este, Treas.                    20 Canal Street.

Boston, Mass., Mar. 29, '94.

We, the undersigned, agree to pay Gould & Dean the sum of $500.00 (five hundred dollars) when the poplar now landed in Ship Pond Stream is driven out into Sebec Lake (to pay men with) and pay them the balance when the rest of the poplar in is in the Milo boom. We further agree to advance money to pay

men for peeling and yarding poplar on Ship Pond Stream, to be cut as agreed upon land known as the Slate Quarry Tract owned by S. & J. Adams. Also to advance money to pay men for yarding upon Ship Pond Stream such poplar as was left in the woods by Hoxie Bros. in their operation, when same is yarded on stream.

BOSTON EXCELSIOR CO.

By Julian d'Este, Treas.

The evidence tended to show that both contracts were signed and delivered at the same time. The plaintiffs introduced evidence tending to show that a few days prior to the making and signing of the contracts the plaintiffs met Julian d'Este, treasurer and agent of the defendant corporation at Milo; that the trade so made at said Milo is embodied in the contract first above. The plaintiffs offered evidence of certain conversations between themselves and said Julian d'Este, made at the time that the trade was made, that was embodied in the contract first above, tending to show that there was an agreement made as to how and by whom the poplar was to be scaled. The plaintiffs claimed that such talk as to the scaler constituted an independent agreement. The defendant introduced evidence tending to show that the contract first above embraced the whole contract made at Milo between the parties.

Upon this branch of the case the presiding justice gave the jury the following among other instructions:—

"The plaintiffs claim to recover a balance of $1821.47 for services alleged to have been performed under a written contract in driving certain logs on Sebec waters into Milo for the benefit of the defendant corporation. They claim that they drove 1025 cords of the Hoxie lumber and 2210 cords of the new lumber; while the defendant claims that there were 848 cords of the Hoxie lumber and 1745 cords of the new lumber,—making a difference of 177 cords of the Hoxie lumber and 465 cords of the new lumber, a difference of considerable importance to the parties; and, as I have observed before, whether the amount be large or small, of course, the parties are entitled to your best judgment on the facts which they present to you. . . . .

"If a written instrument is silent in relation to any material

point it is competent for them [the parties] to show that they have made outside of that an independent agreement in relation to some matter which does not contradict, vary or modify the written contract.

" The plaintiffs seek to avail themselves of this familiar principle of law.

" A written contract has been introduced signed by the parties specifying what was to be done by the plaintiffs with reference to the Hoxie lumber and the new lumber in respect to the cutting, peeling, hauling, landing and finally driving into Milo. It is not in controversy that this was the understanding and that it was done without fraud or mistake on either side, and contracts have been signed.

" But the plaintiffs say that those contracts were prepared, or signed at all events, by the defendant company in Boston, and that there was an independent and important understanding and stipulation between them which was not embodied in this written instrument, and that is with reference to the manner in which and the person by whom the number of cords should be ascertained; in other words, the agreement upon the scaler. And the plaintiffs say that there was such an independent agreement; that it was well and fairly and fully understood between them and the defendant company that not, indeed, the name of the scaler but that the person that should be designated and furnished by the Adamses of Bangor should be the scaler. The plaintiffs both, as I remember, testify that when the inquiry was raised as to who should be the scaler or how the scale should be made, the agent of the defendant corporation, Mr. d'Este, replied in substance that there would be no trouble about the scale, that Adams would send up and furnish the scaler, and the plaintiffs say that that proposition was acceded to by the plaintiffs, if not expressly in words at that time by saying, " That will be satisfactory to us," or " We accept your proposition, that the scaler furnished by Adams shall be the scaler agreed upon," nevertheless that you ought to infer, and must infer as fair-minded men that by their conduct they did accept the proposition and did act upon it; and when Mr. Adams, or the

Adamses, were notified, they sent up the scaler and he entered upon the discharge of his duties at the several landings where the poplar was being hauled.

"Now this is the position of the plaintiffs. They say in other words that there was a fair agreement upon the person who should scale the lumber, that that person was furnished, as understood and agreed upon, by Adams; that he was in fact, if that inquiry should be opened, a competent person, that he entered upon his duties and discharged them fairly and honestly in the exercise of his best judgment, and therefore they claim that the results of his scale are conclusive upon the parties.

"Well, gentlemen, I may as well say here that there is no dispute between counsel in relation to the law upon that branch of the case. It is familiar and well settled that the scale of a scaler is conclusive upon the parties, who have agreed upon him, in the absence of fraud or manifest mistake."

After verdict for the plaintiffs, the defendant was allowed exceptions to the admission of the evidence introduced by the plaintiffs showing how and by whom the poplar was to be scaled.

*W. E. Parsons and J. B. Peaks,* for plaintiffs.

No part of the writing covered this collateral stipulation shown by the plaintiffs, consequently evidence of it was admissible, and it was for the jury to determine whether it was proved or not. *Farwell* v. *Tillson,* 76 Maine, 227, 239; 2 Pars. Cont. pp. 553 and cases, 555 and note; *Davenport* v. *Mason,* 15 Mass. 85, and cases; *Neal* v. *Flint,* 88 Maine, 72.

*H. Hudson and F. E. Guernsey,* for defendant.

In the contract under consideration the language is certain, the contract is complete. The fact that the contract contains nothing in regard to how the poplar is to be scaled or measured does not make such parol evidence admissible as is established by the rule laid down in 1 Greenl. Ev. § 275 ; *Thompson* v. *Libby,* 34 Minn. 377.

Counsel also cited:— *Warren* v. *Wheeler,* 8 Met. 97; *Doyle* v. *Dixon,* 12 Allen, 578; *West* v. *Kelley,* 19 Ala. 353, (54 Am. Dec. 192); *Black* v. *Batchelder,* 120 Mass. 171.

By the contract the poplar was to be driven to Milo, where in absence of agreement of the parties it was to be surveyed by the sworn surveyor of Milo.   R. S., c. 41, §§ 1, 2, 14, 15, 25.

Counsel also cited:— *Chase* v. *Jewett,* 37 Maine, 351; *Haynes* v. *Hayward,* 41 Maine, 488; *Coombs* v. *Charter Oak Co.,* 65 Maine, 384; *Durkin* v. *Cobleigh,* 156 Mass. 108; *Fawkner* v. *Smith Wall Paper Co.,* 88 Iowa, 169, (45 Am. St. Rep. 230); *Russell* v. *Barry,* 115 Mass. 300; *Frost* v. *Blanchard,* 97 Mass. 156; *Knowlton* v. *Keenan,* 146 Mass. 86; *Boardman* v. *Spooner,* 13 Allen, 361; *Adair* v. *Adair,* 5 Mich. 204, (71 Am. Dec. 779); *Cream City Glass Co.* v. *Friedlander,* 84 Wis. 53, (36 Am. St. Rep. 895); *Harrison* v. *McCormick,* 89 Cal. 327, (23 Am. St. Rep. 469); *Barry* v. *Ranson,* 12 N. Y. 462; *Cobb* v. *Wallace,* 5 Coldwell, 539, (98 Am. Dec. 436.)

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, JJ.

EMERY, J.   The defendant had purchased some poplar cut upon the land of Adams and desired to have it driven down the streams to its mill.   It also desired to have other poplar on Adams' land cut, peeled and driven.   To this end, its agent had some conversations with the plaintiffs with reference to their doing the cutting, peeling and driving.   As a result of these conversations the plaintiffs gave the defendant a written memorandum signed by them only, and the defendant at the same time gave them a written memorandum signed by its agent only.   These memorandums are printed in full, ante, pp. 215, 216.

The plaintiffs did cut, peel and drive more or less poplar for the defendant under these memorandums and the amount, or number of cords, was the only question before the jury.

It will be noticed that in neither memorandum was it stated by whom the poplar should be scaled, or that it should be scaled at all.   The plaintiffs offered to show by parol evidence that, during the conversations prior to the exchange of the memorandums, it was orally agreed by both parties that the poplar should be scaled by a scaler to be sent by Adams, the land owner, and that his

scale should control. Was such parol evidence admissible for that purpose under these circumstances?

It is difficult to reconcile the various decisions upon the general question of when parol evidence of other and oral stipulations may be received where some stipulations are expressed in writing. The cases cited in the majority and minority opinions of the court in *Neal* v. *Flint*, 88 Maine, 72, are evidence of that difficulty.

We think, however, that a safe rule, decisive of this case, may be readily deduced from the great majority of the decisions, viz:— Where the writing or writings, by reason of their brevity, informality or skeleton nature, do not of themselves import that all the stipulations between the parties with reference to the subject matter were intended to be expressed in them,—and where the particular stipulation is of such nature that the omission to express it in the writing does not indicate that it was not agreed upon,—and it in no way conflicts with any written stipulation,—and does not increase the burdens of either party,—parol evidence of such stipulation is admissible. We do not say that all the above conditions must exist before the parol evidence can be received. We only say that where they do exist, the parol evidence is admissible. The justices of this court have been unanimous in support of at least this latter proposition. *Bonney* v. *Morrill*, 57 Maine, 368; *Neal* v. *Flint*, 88 Maine, 72.

In this case there was no formal draft of a contract containing reciprocal stipulations signed by both parties. There were only informal memorandums exchanged relating to time, place and price, and making certain the things usually most in debate and most desirable to have made certain. The poplar under such memorandums would require to be scaled. It would be natural to provide for a scaler. The omission to name him in the memorandum does not indicate that the parties agreed to do without a scaler. The alleged oral agreement that Adams, the land owner, should send the scaler does not add to, substract from, nor in any way vary the duties of either party. It was equally for the benefit of both parties. It was competent for either party to prove the stipulation by parol evidence notwithstanding the writings.

*Exceptions overruled.*