MENAKO, Respondent, vs. KASSIEN and wife, Appellants.*

*.November 3—December 1, 1953.*

* Motion for rehearing denied, with $25 costs, on February 2, 1954.

For the appellants there was a brief by *Brazeau & Brazeau* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau*.

For the respondent there was a brief by *Reiland & Schmidt* of Wisconsin Rapids, and oral argument by *Donald E. Reiland*.

MARTIN, J.    Plaintiff alleges in his complaint two grounds on which he bases his right to rescind the contract: (1) Fraud and misrepresentation; (2) defendants' anticipatory breach or repudiation. Proof of either of these grounds·is sufficient to establish plaintiff's case. It is therefore unnecessary to refer to the allegations of fraud and misrepresentation.

The question whether defendants repudiated the contract is a question of law presented by the undisputed facts set forth in the pleadings and the affidavits.

Paragraph 13 of the complaint alleges receipt of the November 7, 1951, letter "demanding full payment from the plaintiff on or before the 1st day of December, 1951, which demand was contrary to the terms of the contracts previously referred to." In the amended answer defendants admit their attorney "demanded payment on or before the 1st day of December, 1951, but allege in respect thereto that the same was in conformity with the terms of the contract."

According to the offer to purchase and the supplemental agreement, which documents are a part of the record, $3,000 was paid by plaintiff to defendants and it was agreed that the balance of the purchase price should be paid "as soon as Louis Menako sells his home in Chicago."

Defendants' allegation that the balance was due on December 1st under the terms of the contract is unfounded. In fact, plaintiff's attorney's letter of November 6th, which in the ordinary course of things defendants' attorneys must have received on November 7th, advised them that there had been delay in the sale of the Chicago home and that it had not been sold as of that date. The affidavit of the Chicago attorney that said home was not actually sold until late in December, 1951, or early January, 1952, is not denied.

What is the meaning of defendants' letter of November 7th? The implication that the contract requires Mr. Menako to make "any and all necessary payments by December 1st" is clearly contrary to the terms of the contract. Defendants' statement that they intend to "exercise any and all rights under the contract" referring, as it does, to enforcing payment by December 1st, is therefore an unauthorized attempt to accelerate the time when the purchase price was to be paid; no payments were due under the contract on December 1st. Defendants' intention is made perfectly clear by

the statement that "this will mean a forfeiture on the part of Mr. and Mrs. Menako of a considerable sum of money." No other conclusion can be reached from the language used but that defendants repudiated the terms of the contract and attempted to substitute terms making the balance due on December 1st.

As stated in 12 Am. Jur., Contracts, p. 1025, sec. 442:

"The persistent maintenance of an untenable construction of a contract on a matter of essential substance should be regarded as not consistent with a continuing intention to observe the contractual obligations."

The rule is well established that the anticipatory breach or repudiation of the terms of a contract by one party thereto gives to the other the right to rescind and sue for his damages.

"Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has, according to the great weight of authority, an option to treat the contract as ended so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach." 17 C. J. S., Contracts, p. 973, sec. 472.

"An unauthorized attempt by insurer arbitrarily to increase the assessment required to continue policy in force was a 'repudiation' of the policy giving rise to a cause of action on behalf of the insured to either stand on the policy and sue in equity for its specific performance, or accept the repudiation as an 'anticipatory breach' and sue at law for the recovery of such damages as resulted from the wrongful rescission and cancellation." *National Life Co. v. Wolverton* (1942 Tex. Civ. App.), 163 S. W. (2d) 654 (syllabus).

"That principle is that when one party to an executory contract, before the time appointed for performance, repudiates it by deliberately declaring that he will not perform, the other party may treat the contract as terminated and recover the damages sustained by the other's breach." *Woodman v. Blue Grass Land Co.* (1905), 125 Wis. 489, 493, 103 N. W. 236, 104 N. W. 920.

See also *Ambler v. Sinaiko* (1919), 168 Wis. 286, 170 N. W. 270; *Pierson v. Dorff* (1929), 198 Wis. 43, 223 N. W. 579.

In defendants' amended answer they allege that "plaintiff had not lived up to the terms and conditions of his purchase agreement;" in their affidavits they state that plaintiff did not intend to live up to the terms of the contract, and that they considered plaintiff to be in default under its terms and conditions. These statements are not borne out by the contract. By the terms of the original purchase offer plaintiff was required to pay $1,000 down, which he did; by the terms of the supplemental agreement he was required to pay an additional $2,000, which he also did. The balance of the purchase price was not due until the Chicago home was sold. Where, then, had plaintiff failed to live up to the terms of the contract; where had he defaulted under its terms?

It is true that plaintiff had complained of misrepresentations regarding the farm, machinery, and animals and requested, in his attorney's letter of October 4, 1951, that the parties get together on "some sort of adjustment;" but such a request for modification of the contract cannot be considered a breach.

". . . a request, suggestion, or proposal of alteration or modification, made after unconditional acceptance, and not assented to by the opposite party, does not affect the contract put in force and effect by the acceptance, nor amount to a breach thereof, giving right of rescission." *Turner v. McCormick* (1904), 56 W. Va. 161, 173, 49 S. E. 28, 33, 67 L. R. A. 853. See also 12 Am. Jur., Contracts, p. 1025, sec. 442.

Defendants cite a number of authorities holding that where the vendor is willing and able to perform, the vendee cannot breach or repudiate the contract and recover what he has paid toward the purchase money unless it can be shown that

the vendor has been unjustly enriched. The authorities are not in point, since here the vendors repudiated the terms of the purchase agreement by their letter of November 7, 1951; and their refusal to recognize the terms of the contract gave the vendee the option to rescind and sue for the recovery of his earnest money.

*By the Court.*—Judgment affirmed.