SCARNE'S CHALLENGE, INC., Appellant, vs. M. D. ORUM COMPANY, Respondent.

*May 3—June 8, 1954.*

135

For the appellant there were briefs by *Wittig & Wittig,* and oral argument by *John A. Wittig* and *Edmund J. Krawczyk,* all of Milwaukee.

For the respondent there were briefs by *Scheinfeld & Winter,* attorneys, and *Harry A. Kovenock* and *Robert C. Koch* of counsel, all of Milwaukee, and oral argument by *Mr. Kovenock.*

FAIRCHILD, C. J.    This appeal is from an order denying summary judgment. At the hearing on motion for summary judgment, the court had before it the following pleadings: Appellant in his complaint alleges that a written agreement was entered into by the parties involved in the transaction here, dated March. 11, 1949, for the sale and purchase of 600 dozen games known as Scarne's Challenge, and that such merchandise was accepted by appellant's letter dated May 3, 1949. He further alleges that there is due and owing from the respondent the sum of $10,620 for goods shipped and unshipped. Respondent alleges that the purchase order dated March 11, 1949, was made "in reliance on certain promises and representations" made to him by appellant, and that appellant has substantially failed to perform such promises, thereby subjecting respondent to damage through loss of business and reputation. Respondent therefore asks that the complaint be dismissed and counterclaims for damage in the sum of $10,000.

The court also had before it the following written documentary evidence:

"May 3, 1949

"M. D. Orum
"1519 W. North ave.
"Milwaukee 5, Wis.

"Gentlemen:

"This is to acknowledge receipt of your order for 600 dozen Scarne's Challenge, your order No. 1328, for delivery 150 dozen July, 300 dozen August and 150 dozen September, for which please accept our thanks.

"We are being very careful in the sale of our product so as to be sure that the retail sales price shall be maintained at $2.98. We require that you notify your customers that 'Challenge' is price fixed to sell at retail at $2.98. We suggest that you place the following statement on your orders and invoices or have it stamped thereon by rubber stamp:

" 'Scarne's Challenge is price fixed at $2.98 per game in accordance with the state price-fixing laws.'

"We are very pleased to inform you that Scarne's Challenge has been accepted very enthusiastically throughout the country, and we hope you will enjoy a great measure of success with this game.

"Our goal for 1949 is three million 'Challenge' games— Cash in on this overwhelming success and get your share— Make this your 'Year of Challenge.'

"Cordially,
"Scarne's Challenge, Inc.
"By: Herbert J. Freezer, Pres."

"M. D. ORUM

| "Distributor—Selected Toys—Gifts | NO. 1328 |
|---|---|

"Distributor—Selected
    Toys—Gifts
"1519 W. North ave.
    Milwaukee 5, Wis.
    Date 2/11..19..
"Given to National Play-
    things
    200 5th ave.
    N. Y. City
"We reserve the right
to reject every shipment
made in violation of the

NO. 1328

All invoices and ship-
ments to bear this order
number

Terms 2/10 EOM Dating
F.O.B...... Allw......
Shipping date..........
Ship via.............

instructions printed and written on this order, and to deduct any excess transportation charges caused by violation of our shipping instructions. Time of shipment is one of the specifications of this order. If goods are not shipped as specified we reserve the right to refuse acceptance. Vendor agrees that merchandise shipped on or after the 25th of the month will be billed as of the 1st of the following month.

| Lot No. | Quantity | Description | Price | Extension |
|---|---|---|---|---|
|  | 600 | doz Challenge games |  |  |
|  | 300 | doz July–Aug. |  |  |
|  | 300 | Aug.–Sept. |  |  |
|  |  | See letter. |  |  |

"This order given by M. D. Orum, 1519 W. North ave., Milwaukee, Wis., and accepted by vendor or vendor's agent at the prices, terms, and conditions printed and written hereon.

"Signed M. D. Orum"

"May 16, 1949

"Mr. M. D. Orum
"618 West National avenue
"Milwaukee, Wisconsin
"Dear Morey:
"I just returned to New York from an extended trip through the country and have been informed by George

Wallach that you have written several letters with reference to the game 'Challenge.'

"Inasmuch as I have five fingers in the sale of this game, let me numerate some of the things that will happen:

"(1) September 11th, full page ad in the 'Milwaukee Journal' and the 'Milwaukee Sentinel.'

"(2) Above to be repeated October 2d.

"(3) Brochures and broadsides will be furnished to all distributors; one of each of these plus a game is being sent to you next week.

"Please advise this office by return mail how many brochures and broadsides you will need for your sales force.

"You will need no special letter of confirmation with reference to your handling the department stores in your area. We take it for granted that you are going to do a bang-up job for us.

"Kindest personal regards.

"Sincerely yours,
"Bud Mesberg JCF /s/
"Bud Mesberg"

In support of its motion for summary judgment, appellant contends that the first two of the documents set out above constituted an unambiguous, integrated contract, complete on its face. Its position is that, therefore, there are no issues of fact to be tried, since parol evidence to show any agreement dehors the writing would be excluded by the parol-evidence rule; and that appellant is entitled to a summary judgment under sec. 270.635, Stats.

Respondent contends, conversely, that the two writings relied upon by appellant as meeting the requirements of a complete integrated contract show only a partial integration of an entire contract. It is the position of respondent that the entire transaction was not merged into the writing, and that, therefore, it has an arguable defense inasmuch as parol evidence is admissible to show the part of the transaction omitted from the writing and left in parol. It therefore in-

sists that the summary-judgment statute has no application here.

Appellant's contention implies that if a written contract is complete on its face, all parts of the transaction have been merged in the writing and no parol evidence is admissible. If this were true, the existence of a collateral independent contract could not be proved even though in such a case both the written contract and the oral contract are complete in themselves and together they constitute the whole transaction. This argument also overlooks the recognized exceptions to the parol-evidence rule where, as in the case at bar, the written memorandum and the oral stipulation consistent therewith are necessary to a completion of the terms of the contract.

In the instant case, an inspection of the purchase order shows that not only are the details, such as date, price, discount terms lacking and the name of the seller inaccurate, but, more important, there was a notation "See letter" written on the face of the order. This notation serves to make the writing equivocal by implying that the order was to be qualified in some way or other. Neither this notation nor the missing details are clarified by the letter of acceptance of appellant. The writing could have been made definite, but it was not. It is, therefore, open to explanation and cannot be said to be complete on its face.

Where a written contract is incomplete on its face, the only general rule which would bar parol evidence is that such evidence may not be received in order to contradict or negate the writing. If the pleadings and affidavits before the court tend to show that the parol evidence is to be introduced for the purpose of proving that the writing is merely a partial integration of a contract, or to show that there was a condition precedent, or to show that there was a collateral independent contract, or to show that the full consideration was not shown, it has been held that it may be admitted to show

the full intention of the parties, provided that such evidence is not in conflict with the terms of the writing. The supreme court of Maine has summed up the situation as follows: "Where the writing or writings, by reason of their brevity, informality, or skeleton nature, do not of themselves import that all the stipulations between the parties with reference to the subject matter were intended to be expressed in them,— and where the particular stipulation is of such nature that the omission to express it in the writing does not indicate that it was not agreed upon,—and it in no way conflicts with any written stipulation,—and does not increase the burdens of either party,—parol evidence of such stipulation is admissible." *Gould v. Boston Excelsior Co.* 91 Me. 214, 220, 39 Atl. 554; 20 Am. Jur., Evidence, p. 992, sec. 1139.

In 3 Jones, Commentaries on Evidence (2d ed.), p. 2713, sec. 1490, the author refers to Stephen's work on Evidence, art. 90, which holds as follows: "The party may prove 'the existence of any separate, oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them, or the existence of any separate oral agreement, constituting a condition precedent to the attaching of any obligation under any such contract, grant, or disposition of property.' "

In our own state, in *Danielson v. Bank of Scandinavia,* 201 Wis. 392, 398, 230 N. W. 83, Mr. Chief Justice ROSENBERRY said:

"In numerous Wisconsin cases it has been held that where applied to the subject matter with which the contract deals or where it appears from the surrounding facts and circumstances that the writing was not an integration of the entire transaction and was not intended by the parties to be such, parol evidence may be received to establish that part of the transaction which was permitted by the parties to remain in

parol. Difficulty arises when an attempt is made to determine what constitutes the part of the transaction which was in fact reduced to writing. Dean Wigmore has laid down three tests: (1st) Whether a particular subject of negotiation is embodied in the writing depends wholly upon the intent of the parties thereto; (2d) this intent must be sought in the conduct and language of the parties and in the surrounding circumstances; (3d) in deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. 5 Wigmore, Evidence (2d ed.), sec. 2430."

The *Danielson Case* was relied upon by the trial court in denying the motion for summary judgment. Following the rules from Wigmore laid down in that case, he found that the writing in the instant case does not embody the elements, namely, advertising and agency, which are to be proved by extrinsic evidence. The writing deals with quantity, price, and terms, expressed or unexpressed, of the proposed sale and the acceptance of same. The subject matter of the oral agreement to be proved is advertising and exclusive agency. The intent of the parties, then, must be sought in the conduct and language of the parties and in the surrounding circumstances. This principle laid down in the *Danielson Case* is also followed in other jurisdictions. *Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co.* 66 Minn. 156, 68 N. W. 854; *Potter v. Easton,* 82 Minn. 247, 84 N. W. 1011; Anno. 70 A. L. R. 762.

The evidence proposed to be introduced by respondent does not have any bearing on the quantity of games ordered, price, or terms. It goes directly to the matter of alleged prior negotiations between the parties which led up to the order and induced the execution of it, as will be seen from the follow-

ing objections to the appellant's motion for summary judgment: That the promises of appellant's representatives were made before the purchase order was given; that they were reiterated in a letter as well as in a 15-page brochure subsequently received by appellant from those representatives (copies of which were before the court); that the game was an entirely new item and its salability depended entirely on the publicity which appellant's representative promised to give through various means; that appellant failed to perform its promises in respect to promoting the game and in respect to exclusive agency. All of these circumstances surrounding the purchase of the merchandise, if proven, would tend to show that the main transaction was in parol and that, as respondent contends, the provisions left in parol were not merged into the writing. The record tends to show that respondent had no direct contact with appellant corporation until his receipt of the letter of May 3, 1949, accepting the order; that the main transaction was carried on through meetings and telephone conversations with authorized representatives of the corporation, and that the order of March 11, 1949, was a mere means by which the main transaction was carried out. In *Ayer v. R. W. Bell Manufacturing Co.* 147 Mass. 46, 16 N. E. 754, a headnote in the Massachusetts report says: "A written order for goods, signed by the buyer only, set forth the kind of goods and the price agreed upon, and contained stipulations as to rebates. *Held,* that evidence of a collateral oral agreement by the seller to advertise the goods was admissible."

The trial court, in considering the circumstances shown in the pleadings and affidavits, held that sufficient and material matters were established to raise an issue taking the matter out of the class of cases where summary judgment may be granted. The problem involved here is "for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, pro or con, con-

cerns merely this question preliminary to the ruling of law. . . . If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that if they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place." 5 Wigmore, Evidence (2d ed.), p. 308, sec. 2430 (2).

In denying the motion for summary judgment, the trial court decided that there was an issue of fact to be determined on a trial as to whether or not the surrounding circumstances show an intent that the writing does not embody the entire agreement. We agree with that decision.

*By the Court.*—Order affirmed.