Ruth Ellen **CHURCH**

v.

**BOBBS-MERRILL COMPANY, Inc.**

No. IP 58-C-89.

United States District Court
S. D. Indiana,
Indianapolis Division.
Feb. 10, 1959.

John Z. Kepler, Indianapolis, Ind., for plaintiff.

Baker & Daniels, Paul N. Rowe and John B. King, Indianapolis, Ind., for defendant.

STECKLER, Chief Judge.

This matter came before the court upon the defendant's motion for summary judgment. Plaintiff brought this action seeking damages for an alleged breach of a contract executed by the plaintiff and defendant on or about January 18, 1951. In that contract plaintiff assigned to defendant all the volume publication rights in an unpublished literary composition to be written by plaintiff and entitled "Mary Meade's Magic Cookery," and plaintiff agreed to deliver to the defendant, a publishing house located in Indianapolis, on or about January 2, 1953, the manuscript for said composition "complete, legible and ready for the printer," and consisting of approximately 4,000 recipes. The defendant agreed to publish the completed manuscript in one volume in the style and manner it deemed best. The contract stipulated no publication date or other time requirement for the performance of defendant's undertaking under the contract. Plaintiff charged in her complaint that defendant, on or about November 13, 1957, wholly repudiated that contract.

After the execution of the January 18, 1951, contract, and until 1956, plaintiff periodically supplied the defendant with parts of the manuscript for the book "Mary Meade's Magic Cookery." During the period from 1951 through 1955, plaintiff also prepared two other manuscripts which were published by defendant. The first of such manuscripts was for a book entitled "Mary Meade's Magic Recipes for the Electric Blender," which was published in 1952, and the second was for a book entitled "Mary Meade's Kitchen Companion," which was published in 1955. Both plaintiff and defendant have conceded that the preparation and publication of the two intervening books retarded progress on the preparation of the manuscript for the book "Mary Meade's Magic Cookery," particularly since parts of the manuscript earlier delivered by plaintiff for the book "Mary Meade's Magic Cookery" were taken from that manuscript and incorporated and used in the manuscript for the 1955 publication, "Mary Meade's Kitchen Companion."

The January 2, 1953, deadline for the delivery of the manuscript for the book "Mary Meade's Magic Cookery," as provided in the January 18, 1951, contract, was formally extended by the defendant in September, 1952, to September 15, 1953. In its formal extension defendant expressly noted that the original contract was being amended only with respect to the delivery date and that all of the remaining terms of the contract remained in full force and effect. Although the delivery date for the manuscript of "Mary Meade's Magic Cookery" was never again formally extended, both parties admitted that such delivery date, after September 15, 1953, was extended from time to time by mutual consent and that the contract was considered by them to be in effect at the time of the alleged breach thereof charged by plaintiff.

During the years 1956 and 1957 plaintiff submitted no additional manuscript to the defendant for the book "Mary Meade's Magic Cookery." In March, 1957, in reply to a letter written by plaintiff inquiring as to whether the defendant had any thought of publishing the manuscript for "Mary Meade's Magic Cookery" in parts as cookbook specialties, defendant explained to plaintiff that it had no thought of publishing parts of the manuscript as small, separate books. Defendant further explained to plaintiff that before it could make any real choice relative to the publishing and marketing of the manuscript as a general cookbook,

it would be necessary for the defendant to receive the manuscript "in final form ready for manufacture." Plaintiff had earlier admitted in a letter dated February 4, 1957, that "there need[ed] to be revision on earlier chapters [of the manuscript] due to taking out material for Kitchen Companion."

Plaintiff did not reply to defendant's letter of March 7, 1957, until August 21, 1957, during which time no additional manuscript was supplied by plaintiff. In her letter of August 21, 1957, plaintiff admitted that she had supplied only 85 per cent of the manuscript for the book "Mary Meade's Magic Cookery." Plaintiff then made the following demand:

"Unless you have a firm, clear plan for the book, I should like to have the manuscript back and present it to another publisher."

Plaintiff's letter was acknowledged by defendant by a letter dated September 4, 1957. In that letter the defendant communicated to plaintiff in clear and unambiguous language its understanding of plaintiff's proposal of August 21, 1957, viz.:

"I take it from your letter that what you want us to do now is to set up a definite publication schedule for the book; and if we are not able to do that at this time, you would like to have the manuscript returned and the contract cancelled so that you could arrange for publication elsewhere. Nothing could be fairer than that. From time to time we have given you extensions of the delivery date for the final, complete, manuscript; and in every instance I believe that this has been a matter of mutual accord."

Ross G. Baker, the writer of defendant's letter, further stated that plaintiff could expect to have from the defendant within four or five weeks a definite answer to her "proposal."

On October 17, 1957, defendant again wrote plaintiff and stated that it had been unable to give plaintiff "a final reply on Mary Meade's Magic Recipes," but

that plaintiff would receive a letter "soon." Thereafter, by letter dated November 13, 1957, defendant informed plaintiff that it was returning the manuscript. The return of the manuscript is the act which plaintiff charged as constituting a repudiation of the contract by defendant.

Plaintiff admitted that she received defendant's letters of September 4, 1957, October 17, 1957, and November 13, 1957. Plaintiff also admitted that she never returned the manuscript to defendant, and that she has never offered to return the manuscript to defendant. Plaintiff further admitted that she in fact submitted the manuscript to another publisher or publishers.

At no time during the interval between September 4, 1957, and November 13, 1957, did plaintiff ever communicate in any manner to defendant any objections or corrections concerning defendant's clear and unambiguous understanding of her proposal of August 21, 1957, as set forth in defendant's letter of September 4, 1957. Defendant in fact received no communication from plaintiff until December, 1957, when it received a letter dated December 7, 1957 from plaintiff's attorneys charging that defendant, by returning the manuscript, had repudiated the contract.

Pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., defendant seeks a summary judgment on the ground that there is no genuine issue of any material fact, and that as a matter of law defendant is entitled to judgment. Defendant asserts that the contract was expressly rescinded by mutual agreement; that plaintiff is estopped to deny such rescission; that plaintiff repudiated the contract, in which repudiation defendant concurred and thereby was released from the contract; and that in any event defendant had no obligation to perform the contract until plaintiff furnished the complete manuscript and therefore could not be guilty of the alleged breach of contract.

■ The admitted documentary evidence before the court, commencing with

**36**

plaintiff's letter of August 21, 1957, and ending with defendant's letter of November 13, 1957, plainly shows the understanding of both parties that, unless defendant was then able to set up a definite printing schedule for the book "Mary Meade's Magic Cookery," defendant was to return the manuscript to the plaintiff and cancel the contract so that plaintiff could submit the manuscript to another publisher. Plaintiff argues that her letter of August 21, 1957, is ambiguous in its meaning and that, therefore, there can be no mutual rescission, since a mutual rescission may only result where there is a clear and unambiguous expression of the intent to rescind. Assuming plaintiff's assertion is proper, plaintiff is nevertheless bound by the concise and simple statement of defendant's understanding of her offer set forth in its letter of September 4, 1957. The law is well settled that an offeror is bound in law, as well as ethics, by the interpretation of an offer that the offeror knew or had reason to know that the offeree had adopted. Star Chronicle Publishing Co. v. New York Evening Post, 2 Cir., 1919, 256 F. 435.

Defendant's understanding of plaintiff's proposal of August 21, 1957, as set forth in its letter of September 4, 1957, is the determinative material fact about which there is no genuine issue. Plaintiff has not challenged the meaning of defendant's understanding set forth in its letter of September 4, 1957. Either plaintiff's offer was an explicit offer to rescind, or it was ambiguous but was rendered clear and explicit by defendant's reply, to which plaintiff expressed no exception. Consequently, defendant's acceptance of plaintiff's offer as understood by defendant, which understanding plaintiff admittedly knew, constituted a rescission of the contract by the mutual assent of the parties thereto. The mere raising of an unfounded charge of "ambiguity or intent" to escape summary judgment has been recognized by the Court of Appeals for the Seventh Circuit as not preventing the utilization of the summary judgment

procedure under Rule 56 of the Federal Rules of Civil Procedure where such charge is disproven by the undisputed documentary evidence. Repsold v. New York Life Insurance Co., 7 Cir., 1954, 216 F.2d 479.

Defendant further contends that, irrespective of whether the contract was rescinded by the express mutual agreement of the parties, plaintiff is estopped from asserting a breach of the contract because the alleged breach was induced by plaintiff's act. The estoppel is fully supported by the admitted facts. Plaintiff's request for the return of the manuscript, if not a precise offer to rescind the contract, was utterly inconsistent with any further performance of the contract by defendant and was definitely in derogation of the contractual rights of the parties. If plaintiff meant what her language implied, she was at least suggesting that the defendant put itself in a position in which it could not possibly perform the contract and that the contractual relationship be terminated. By that enigmatic communication plaintiff induced defendant to undertake to determine the meaning of plaintiff's offer and to communicate to plaintiff defendant's understanding of her offer. Plaintiff admitted receiving defendant's letter of September 4, 1957, and yet she made no attempt for a period of more than eight weeks, even after receiving an intervening reminder of defendant's reliance on its interpretation of her offer, to correct defendant's understanding of her offer. Plaintiff, having originated the proposal, had the clear duty to speak if defendant's interpretation thereof was in error. Defendant, relying upon its interpretation, returned the manuscript to plaintiff, thereby relinquishing its right to publish the manuscript, forfeiting its existing investment in the manuscript, and providing plaintiff with the opportunity of submitting the manuscript to another publisher who could conceivably publish said manuscript in competition with plaintiff's existing cookbooks. There is no genuine issue as to the material facts that plaintiff received defendant's

letter of September 4, 1957, and thereafter failed to communicate in any manner, by telephone, telegraph or by letter, a correction of defendant's understanding of her proposal. That a summary judgment may be based on the principle of estoppel has been recognized by the Court of Appeals for the Seventh Circuit. Bituminous Trucking & Equipment Co. etc. v. Delta Air Lines, 7 Cir., 1951, 189 F.2d 307.

That a party may be estopped by silence or inaction where there is a right and an opportunity to speak and an obligation or a duty to do so has been recognized in Indiana as well as elsewhere. Allen v. Powell, 1917, 65 Ind.App. 601, 115 N.E. 96; Ashland Oil & Refining Co. v. Beal, 5 Cir., 1955, 224 F.2d 731; Willard Helburn, Inc. v. Spiewak, 2 Cir., 1950, 180 F.2d 480.

Accordingly, plaintiff, by electing to remain silent and to stand by while defendant proceeded to accept her proposal, is estopped from charging that defendant's return of the manuscript constituted a repudiation of the contract.

■■ As a third proposition in support of its motion for summary judgment defendant contends that plaintiff, by demanding the immediate formulation of a definite publication schedule for the manuscript or the return of the manuscript, abandoned the terms of the original contract, thus entitling defendant to rescind the contract under the well-settled law that where one party to a contract abandons or disavows the contract and makes a demand based upon new terms not a part of the contract, the opposite party may rescind such contract. Menako v. Kassien, 1953, 265 Wis. 269, 61 N.W.2d 332.

The contract provided that the defendant was obligated to publish the completed manuscript "in the style and manner they deemed best." Defendant asserts that plaintiff's demand for a "firm, clear plan" prior to her submission of the complete manuscript was an abandonment of the contract by the plaintiff. The defendant's basic contractual obligation was to publish the complete manuscript "in the style and manner they deem best." Plaintiff, having failed to perform her precedent obligation under the contract to deliver a manuscript of approximately 4,000 recipes "complete, legible and ready for the printer," demanded that defendant at that time have a "firm, clear plan" for publication, or return the partial manuscript to her. This was in effect an abandonment of the contract and the substitution therefor of a term not provided in the contract. Accordingly, defendant was entitled to rescind the contract. Plaintiff admitted that she demanded a firm, clear plan and that she had not submitted a completed manuscript. The contract, in unmistakable terms, imposed upon defendant an obligation to publish only after receipt of a completed manuscript and then in the manner and style it deemed best. There is, consequently, no genuine issue as to the material facts conclusively showing that plaintiff's demand was beyond the terms of the contract and constituted an abandonment thereof, and, therefore, defendant's return of the manuscript consummated a valid rescission of the contract.

■ Since defendant's first three propositions establish its right to a summary judgment, abbreviated consideration need only be given to its fourth and equally sound contention, namely, that plaintiff, by failing to submit, admittedly, a manuscript "complete, legible and ready for the printer," had not performed her precedent obligation under the contract and, therefore, until plaintiff submits a manuscript "complete, legible and ready for the printer," defendant cannot be held for any breach of the contract. It is fundamental that a party must perform his or her precedent obligation under a contract before charging a breach to the opposite party for failure to perform. Not then being obligated to perform the defendant's act in returning the manuscript if a breach of the contract, would have been an anticipatory breach, but that act was requested and induced by the plaintiff. Attributing good faith to her acts, she

presumably would not have sought to trap the defendant into committing an anticipatory breach of the contract. In either event, for an alleged breach requested and induced by her, plaintiff can have no right of recovery.

The affidavits and admissions on file with the court demonstrate beyond question that there is no genuine issue as to any of the material facts governing the disposition of this matter and that defendant is entitled to summary judgment as a matter of law.

It Is Therefore Hereby Ordered that judgment be entered accordingly, with costs taxed against the plaintiff.