MORN and another, Appellants, v. SCHALK, Respondent.

*September 7—October 3, 1961.*

For the appellants there was a brief by *Robert J. Beaudry,* and oral argument by *Mr. Bernard J. Lutzke* and *Mr. Beaudry,* both of Milwaukee.

For the respondent there was a brief by *Aaron L. Weiss* and *Lakes & Marcuvitz,* attorneys, and *Jerold I. Perlstein* of counsel, all of Milwaukee, and oral argument by *Alexander Lakes.*

CURRIE, J.  A sharp dispute exists in the testimony as to the terms of the contract entered into between the parties. The learned trial court resolved this dispute by finding the terms of the agreement to be as testified to by the defendant. By its memorandum opinion, it found that defendant was entitled to rescind the contract on two grounds: (1) Defendant had been induced to enter into the agreement by material false representations made by the plaintiffs; and (2) plaintiffs were guilty of an anticipatory breach of this contract. However, only the ground for rescission based upon fraud was incorporated into the findings of fact and conclusions of law.

Either of these grounds would be sufficient to sustain the judgment of rescission if supported by proper findings grounded upon the evidence adduced. Because a case of anticipatory breach is so clearly established by the instant record, we find it unnecessary to pass on the issues raised by plaintiffs with respect to the trial court's determination that the contract was induced by material false representations.

The first attack leveled by the plaintiffs on the judgment below is that the trial court erred in its determination of the terms of the contract. In order to properly pass on this

contention, it is first necessary to set forth the evidence which tends to support the findings with respect to the provisions of the contract. Second, a question of law is presented as to whether the testimony given by defendant with respect to the terms of the contract possesses any materiality in view of the parol-evidence rule.

Plaintiffs are engaged in the insulating business with their office and warehouse situated in the city of Wauwatosa. On September 1, 1957, they entered into a written agreement with the Promat Division of Poor & Company whereby the plaintiffs were granted a nonexclusive distributorship of Promat's insulating material marketed under the trade name of "Prosul." The term of such distributorship was for one year subject to being extended by mutual agreement of the parties. Promat transferred possession and title to the plaintiffs of a quantity of Prosul and equipment for its application. The total agreed consideration to be paid by the plaintiffs for the distributorship, material, and equipment was $7,047.82. Plaintiffs paid Promat $2,500 in cash and executed their note for the balance in the sum of $4,547.82. Prosul was but one of the insulating materials used by the plaintiffs in carrying on their insulating business.

On November 1, 1957, defendant entered the employ of the plaintiffs as a salesman. In addition to his selling activities, his duties also included expediting and installing insulation material in residences. Although defendant worked up and submitted estimates for the furnishing of Prosul on certain insulating jobs, these met with no success. Prior to defendant's employment by the plaintiffs, only one installation using Prosul had been sold by the plaintiffs. At the time they entered into the contract with defendant, plaintiffs had on hand nearly all of the Prosul previously acquired from Promat.

Defendant left plaintiffs' employ the latter part of April, 1958, and went to work in his father-in-law's used-car lot. Defendant's version of the events which thereafter transpired is sharply disputed in many respects by the testimony of the plaintiffs. However, it is apparent from the trial court's memorandum opinion, and findings of fact, that it believed defendant and disbelieved plaintiffs with respect to the disputed points material to this appeal. For the purposes of this appeal it is only necessary that we recount defendant's testimony. This is because such testimony reasonably supports the material findings, and is not discredited by evidence other than the verbal testimony of the plaintiffs. Therefore, the facts hereinafter related are those testified to by defendant, except as otherwise noted.

Plaintiff Howlett went to see the defendant several times between May 1 and June 30, 1958. In these conversations he endeavored to interest defendant in taking over the Prosul distributorship and purchasing the material and equipment which plaintiffs had acquired from Promat. The terms offered by Howlett were that plaintiffs would sell the material on hand, the equipment, and the distributorship to defendant in return for $2,000 and his assumption of the balance owing on plaintiffs' note to Promat. Howlett represented to defendant that by accepting this offer he would thereby receive exclusive distributorship rights to Prosul in Wisconsin. Defendant evinced an interest in this proposal, and on June 30, 1958, the parties met at plaintiffs' office to consummate the deal on the basis of the terms previously proposed by Howlett.

Plaintiffs drafted the following writing which all three parties signed at their conference of June 30, 1958:

"Both partys [sic] concerned agree to:
"John Morn Insulation Company, James R. Howlett, and John Morn agree to sell to John Schalk said Pro Mat equip-

ment and the right to be the exclusive applicator of said material in the state of Wisconsin.

"John Schalk agrees to assume the amount of note do [sic] on equipment in the amount of $4,547.82. This note shall be paid in the amount of 1/3 of the total price of each job done by John Schalk till the balance is paid in full."

Coincident with the signing of the above writing, defendant paid plaintiffs $1,000 and executed a $1,000 note, which was payable to the order of the plaintiffs in $100 monthly instalments commencing August 1, 1958. After this transaction had taken place, plaintiffs delivered to defendant their file on Prosul, which contained the distributorship agreement entered into with Promat on September 1, 1957.

The next day, after reading this distributorship agreement, defendant discovered that it contained a clause requiring Promat's consent to any assignment of that agreement by the plaintiffs. That same day, July 1, 1958, defendant went to Waukegan, Illinois, to contact Promat for the purpose of effectuating the transfer of the distributorship to himself. Promat informed him that in order to do this he must have a written assignment from the plaintiffs and that he also "would have to comply financially."

Upon defendant's return from Waukegan, he went to the plaintiffs and demanded a written assignment of the Prosul distributorship, but the plaintiffs refused. In this conversation, plaintiffs also informed defendant that their agreement did not include the Prosul material on hand because only the equipment was mentioned in the writing signed on June 30, 1958. According to defendant's testimony, plaintiffs then demanded that he pay the $1,000 note as a condition precedent to assignment of the distributorship and release of the Prosul material to him, although on cross-examination he admitted that the plaintiffs requested that he secure the note by putting up collateral. Plaintiffs testi-

fied that they demanded collateral be put up to secure payment of the $1,000 note in return for turning over the distributorship. Defendant then demanded the return of the $1,000 he had previously paid and cancellation of the "deal."

The trial court's memorandum opinion states: "The plaintiffs, by unilateral action, sought to require the defendant to give security for the payment of a $1,000 note subsequent to the contract of June 30, 1958." Because the formal findings of fact do not cover this point, the statement in the opinion has the weight of a finding of fact. *Kietlinski v. Interstate Transport Lines* (1958), 3 Wis. (2d) 451, 456, 88 N. W. (2d) 739; *Estate of Wallace* (1955), 270 Wis. 636, 639, 72 N. W. (2d) 383.

With respect to what actually had been agreed upon between the parties on June 30, 1958, the trial court made the following finding of fact:

"5. That on June 30, 1958, plaintiffs and defendant entered into a certain agreement whereby plaintiffs sold to defendant the following:

"(a) Certain equipment for the application of an insulating material, known as Prosul.

"(b) Approximately 10,000 square feet of Prosul insulation material.

"(c) The exclusive right to distribute said Prosul in the state of Wisconsin.

"(d) The exclusive right to apply said Prosul in the state of Wisconsin.

"In consideration of said sale by plaintiffs, the defendant agreed to the following:

"(e) Payment of $1,000 at once to plaintiffs.

"(f) Execution and delivery of a note for $1,000 by defendant payable to plaintiff, James R. Howlett, at the rate of $100 per month commencing August 1, 1958.

"(g) Assumption of an outstanding obligation of plaintiffs to Poor & Co. of Waukegan, Illinois, in the amount of $4,547.82 by defendant; said obligation to be discharged

by defendant by paying 1/3 of the total amount of each future job using said material, to apply against the said indebtedness."

Plaintiffs' position on this appeal is that the intention of the parties, as to their agreement of June 30, 1958, must be sought from the language of the written instrument executed on that date. There is no mention of the distributorship in the instrument, only the right to apply Prosul is mentioned. Therefore, it is argued that defendant's testimony as to any oral understanding between the parties, that he was to receive the plaintiffs' rights to the distributorship, is immaterial. In effect, plaintiffs are asking this court to apply the parol-evidence rule that oral testimony may not be employed to vary the terms of a written instrument.

The plaintiffs, in seeking to enforce the $1,000 note which is not mentioned in the written instrument of June 30, 1958, by necessity are forced to concede that such instrument failed to state all of the consideration to be furnished by defendant. Thus, plaintiffs are driven into the inconsistent position of acknowledging that parol evidence is proper to show that other consideration was to be given by defendant, over and above that stated in the writing signed by the parties, but contending that it was improper for the court to consider parol testimony that disclosed the *quid pro quo* defendant was to receive from the plaintiffs for such additional consideration.

We deem that this aspect of the instant case is controlled by *Scarne's Challenge, Inc., v. M. D. Orum Co.* (1954), 267 Wis. 134, 64 N. W. (2d) 836. This case holds that, when a writing is shown to be only a partial integration of the agreement reached by the parties, it is proper to consider parol evidence which establishes the full agreement, subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing.

In considering the application of the parol-evidence rule to the facts of this case it is well to note that this rule is more than one relating to the admissibility of evidence. In fact it is a rule of substantive law. *Mears v. Smith* (1908), 199 Mass. 319, 85 N. E. 165; 4 Williston, Contracts (3d ed.), p. 955, sec. 631. Therefore, even if, without objection, parol evidence of the intention of the parties to a written contract, which conflicts with the express provisions of such contract, gets into the record, the court must disregard it. However, defendant's parol testimony, upon which the trial court grounded its afore-quoted finding of fact, did not conflict with the part of the agreement reduced to writing. Therefore, we determine that such finding is supported by proper evidence.

We turn now to the issue of anticipatory breach. As previously mentioned, the trial court's determination of this issue is found only in the memorandum opinion, not in the formal findings of fact and conclusions of law. We quote from such memorandum opinion as follows:

"The insistence by the plaintiffs of security for the payment of the $1,000 note was a material addition to the contract of June 30, 1958, and before it could be binding upon the defendant it was necessary that he agree to the modification of the agreement of June 30, 1958, as requested by the plaintiffs. The refusal to turn over the material and equipment, as provided for under the contract, by the plaintiffs to the defendant constituted a substantial breach of the contract of June 30, 1958, and the defendant was entitled to rescind."

The trial court was in error in stating that the plaintiffs refused to turn over the equipment unless defendant complied with their demand for collateral on the $1,000 note. Defendant's testimony admitted that such refusal only extended to the material, not the equipment. However, this minor inaccuracy in stating the facts is wholly immaterial

in so far as its effect on the issue of anticipatory breach is concerned. This is because it is undisputed that plaintiffs refused to assign the distributorship, or deliver over the Prosul material, to defendant unless he complied with their demand to furnish collateral for the $1,000 note.

It is a well-settled principle of law that a repudiation of the terms of a contract, and demand for performance substantially different from that provided for in such contract, constitutes an anticipatory breach which entitles the other contracting party to rescind. *Menako v. Kassien* (1953), 265 Wis. 269, 61 N. W. (2d) 332; *Richards v. Manitowoc & Northern Traction Co.* (1909), 140 Wis. 85, 121 N. W. 937; *Church v. Bobbs-Merrill Co.* (D. C. Ind. 1959), 170 Fed. Supp. 32, 37, affirmed on other grounds (7th Cir. 1959), 272 Fed. (2d) 212.

*By the Court.*—Judgment affirmed.