ASSOCIATED CATALOG MERCHANDISERS, INC. *v.*
PIERRE E. CHAGNON ET AL.
(13525)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued January 5—decision released April 18, 1989

*F. Woodward Lewis, Jr.,* with whom, on the brief, was *Robert J. Mead,* for the appellants-appellees (defendants).

*Thomas H. Connell,* for the appellee-appellant (plaintiff).

GLASS, J. The paramount issue in this case is whether the trial court erred in determining that a writing purporting to be an "installment note" executed by the defendants, Pierre E. Chagnon and Marian G. Chagnon, actually represented a continuing guaranty rendering the defendants liable for debts arising from their business's open credit account with the plaintiff. The defendants appealed to the Appellate Court from a judgment of $35,000 rendered in favor of the plaintiff, and the plaintiff cross appealed. We transferred the case to ourselves pursuant to Practice Book § 4023. We find no error with respect to the defendants' appeal, or with respect to the plaintiff's claim for interest on the cross appeal. We remand the case for further articulation on the plaintiff's claim for attorney's fees.

The facts may be summarized as follows.[1] The plaintiff, Associated Catalog Merchandisers, Inc., supplied merchandise to the defendants' wholesale business, Hanover Gift House (Hanover), on a "running account." In 1975, after the defendants' business encountered financial difficulties, the plaintiff proposed that the defendants sign a promissory note making them personally liable for Hanover's debt. This note was never executed. At the plaintiff's behest, however, on September 1, 1977, an instrument entitled "Installment Note" was executed by Pierre Chagnon as vice president of Hanover and by both defendants in their individual capacities. The note provided in relevant part: "For Value Received [Hanover Gift House] and/or Pierre Chagnon and/or Marion [sic] Chagnon promise to pay to the order of Associated Catalog Merchandisers, Inc. the sum of $35,000.00 (Thirty-five thousand) with interest thereon at the rate of Twelve per cent (12 %) per year, the principal and interest payable in installments as follows: October 1, 1977 $1,000.00 plus accrued interest and $1,000.00 plus accrued interest every month thereafter. . . . In the event of default hereunder the undersigned agree to pay all costs of collection including reasonable attorney's fees." There was no evidence that either party had legal assistance in the preparation or execution of the note.

The plaintiff continued to supply merchandise to Hanover for the next several years. During this period, the plaintiff applied all money received from the defendants to the open account balance. In September, 1978, the defendants sent the plaintiff a corporate check for $20,000 bearing a notation that the money should be applied to the installment note. Upon receipt of the

---

[1] The parties in this case did not request transcripts of the proceedings below. Consequently, we must assume that the facts set out in the trial court's memorandum of decision are supported by the evidence. Cf. *Nair* v. *Thaw*, 156 Conn. 445, 455, 242 A.2d 757 (1968).

check, however, the plaintiff's president, Richard C. Fredette, Jr., telephoned Pierre Chagnon and told him "you know better than that" and that the payment would not be applied to the note. Subsequently, Fredette directed his office manager to "white out" the notation, and credited the check to the open account balance. In December, 1980, the defendants' corporate check for $15,000 similarly was applied to reduce the open account balance without being altered. Further, in December, 1985, two other checks totaling $20,000 and bearing the notation "without prejudice" also were applied to the open account.

In late 1986, Fredette discussed Hanover's large outstanding balance with Pierre Chagnon. Chagnon told Fredette that "I don't owe you anything personally and my company may not be able to pay you." Thereafter, on November 19, 1986, the plaintiff's application for an ex parte attachment on the defendants' real property located in Meriden was granted. The plaintiff's complaint dated November 24, 1986, named Pierre and Marian Chagnon as defendants. In an amended complaint dated November 25, 1987, the plaintiff alleged that the installment note operated as the defendants' personal guaranty on the debt arising from the open account. The plaintiff sought $54,943.86 in money damages representing the principal on the note plus interest accruing to September 30, 1987, and also sought reasonable attorney's fees.

At trial, Fredette testified that the note was "security for past or future deliveries. . . . The consideration was the future deliveries which would be assured. . . . What I gave him [by his signing the instrument] was the ability to continue to receive merchandise . . . the note was intended to be used solely as a guaranty of payments if the company was unable to make payments." Grita B. French, the plaintiff's former office manager, testified that the "defendants' company was

very slow paying bills, and this was an attempt to guaranty personally the company's bills. . . . I whited out the check [of September, 1978,] after Mr. Fredette told Pierre Chagnon he wouldn't apply it to the note. . . . Mr. Fredette called Pierre Chagnon two minutes after he received the check and said to him 'you know better than that' . . . the note was a guaranty." Edward Symanksy, the plaintiff's former employee and director, testified that "[o]n defendants' account we thought we should get a guaranty . . . while I had frequent personal contact with defendants, I never heard them say they wanted to pay off the note." In a deposition admitted at the trial, Pierre Chagnon testified that "[w]hat we bought [with the agreement] was the ability to keep buying."

The trial court issued a memorandum of decision on January 22, 1988. Relying on the foregoing evidence, it concluded that the installment note was intended to represent a guaranty rendering the defendants personally liable for $35,000. The court rejected the defendants' argument that the checks they earmarked toward satisfaction of the installment note extinguished their liability on the underlying corporate debt. It found that when the note was executed, the plaintiff was unwilling to extend the defendants further credit without assurances of their personal liability, and that the defendants in executing the note intended to induce the plaintiff to continue to supply them with merchandise on credit. The trial court rendered a judgment against the defendants for $35,000, but denied the plaintiff interest. The memorandum made no reference to the plaintiff's claim for attorney's fees.

On appeal, the defendants claim that the trial court erred by (1) relying on parol evidence to interpret the installment note as a continuing guaranty, (2) rejecting the defendants' statute of limitations defense, and (3) finding the defendants personally liable without

making any finding on the debt of the defendants' corporation. The plaintiff on cross appeal asserts that the trial court erred in refusing to award it interest on the $35,000 principal and reasonable attorney's fees incurred in bringing suit to enforce the defendants' liability.

I

The defendants claim that the trial court erred in adverting to parol evidence in its interpretation of the installment note, and, therefore, improperly reached the conclusion that the note was a continuing guaranty. They argue that the parol evidence was not admissible under any of the exceptions to the rule set forth in *Jay Realty, Inc.* v. *Ahearn Development Corporation,* 189 Conn. 52, 56, 453 A.2d 771 (1983).[2] They also argue that any continuing guaranty between the parties was "revoked" by the actions of Pierre Chagnon and, further, that the trial court erred in "reforming" the written agreement since the plaintiff did not seek reformation in its pleadings.

" 'Whether the written contract was actually the final repository of the oral agreements and dealings between the parties depends on their intention, evidence as to which is sought in the conduct and language of the parties and the surrounding circumstances. If the evidence

---

[2] The defendants claim that the note is a negotiable instrument under article three of the Uniform Commerical Code; General Statutes § 42a-3-104; and that in signing the note they became an "accommodation party." General Statutes § 42a-3-415 (1). Nevertheless, neither the defendants nor the plaintiff relies on any provision of the code relative to the admissibility of parol evidence. We agree with the parties that article three principles are inapplicable in this case. See *EAC Credit Corporation* v. *King,* 507 F.2d 1232, 1238 (5th Cir. 1975) (contract of continuing guaranty not governed by Uniform Commercial Code); *Liberty Bank* v. *Shimokawa,* 2 Haw. App. 280, 282, 632 P.2d 289 (1981), cert. denied, 454 U.S. 1146, 102 S. Ct. 1009, 71 L. Ed. 2d 299 (1982) (continuing guaranty is not transaction governed by code).

leads to the conclusion that the parties intended the written contracts to contain the whole agreement, evidence of oral agreements is "excluded," that is, excluded from consideration in the determination of the rights and obligations of the litigants, even though it is admitted on the issue of their intention. *Cohn* v. *Dunn,* 111 Conn. 342, 346, 149 A. 851 [1930].' *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 254–55, 188 A.2d 493 (1963) . . . . " (Citations omitted.) *Damora* v. *Christ-Janer,* 184 Conn. 109, 113–14, 441 A.2d 61 (1981). A written agreement is "integrated" and operates to exclude evidence of the " 'alleged extrinsic negotiation' " if the subject matter of the latter " 'is mentioned, covered or dealt with in the writing . . . ; if it is not, then probably the writing was not intended to embody that element . . . . ' " *Cohn* v. *Dunn,* supra, 347; *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* supra, 258; 2 Restatement (Second), Contracts § 215; 30 Am. Jur. 2d, Evidence § 1045. If the evidence, however, does not indicate that the writing is intended as an integration, i.e., "a final expression of one or more terms of an agreement"; 2 Restatement (Second), Contracts § 209 (1); then "the agreement is said to be 'unintegrated,' and the parol evidence rule does not apply." E. Farnsworth, Contracts § 7.3., p. 452. Whether the parties intended to integrate their negotiations in a writing is a question of fact for the court. *Jarvis* v. *Cunliffe,* 140 Conn. 297, 299, 99 A.2d 126 (1953); 2 Restatement (Second), Contracts § 210 (3).

In the present case, the trial court's consideration of evidence extrinsic to the installment note to determine whether that writing was an "integration" was entirely proper. *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* supra; *Cohn* v. *Dunn,* supra. Moreover, the trial court's conclusion that the parties had agreed to a contract of continuing guaranty necessarily was predicated on a determination that the installment note did not

constitute an "integration" of the parties' agreement. We are not persuaded that such a finding was clearly erroneous. Cf. *Jarvis* v. *Cunliffe,* supra.

The parties in this case conducted business pursuant to the open account arrangement for a number of years prior to the execution of the installment note. In the mid-1970s, the defendants' business encountered financial difficulties, prompting the plaintiff to seek assurances that it would be paid for the merchandise it supplied on credit. In addition, the following factors are significant: the terms of the installment note did not purport to deal with the debt of the defendants' business on the open account; *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* supra; *Cohn* v. *Dunn,* supra; the note was brief and skeletal in nature; *Gould* v. *Boston Excelsior Co.,* 91 Me. 214, 220, 39 A. 554 (1898); and contained no recital that it was intended to constitute the parties' final agreement; 30 Am. Jur. 2d, Evidence § 1019; the parties did not seek legal advice in executing the instrument; Pierre Chagnon admitted that the purpose of the note was to enable Hanover to continue to buy merchandise from the plaintiff pursuant to their long established course of dealing; and the parties' conduct subsequent to execution of the note forcefully demonstrates that they intended the installment note to represent the defendants' continuing personal guaranty on the debt arising from the open account. See *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407–408, 365 A.2d 1086 (1976); *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 343, 150 A.2d 597 (1959); *Beach* v. *Beach,* 141 Conn. 583, 591, 107 A.2d 629 (1954); *Campbell* v. *Rockefeller,* 134 Conn. 585, 590, 59 A.2d 524 (1948). Under these circumstances, evidence of the oral negotiations was admissible "in the determination of the rights and obligations of the litigants . . . . " *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* supra, 255.

The defendants' argument that the parol evidence relied on by the trial court does not fit within any of the exceptions enumerated in *Jay Realty, Inc.* v. *Ahearn Development Corporation,* supra, is unavailing. In *Jay Realty, Inc.,* we observed that "[p]arol evidence is admissible (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud." Id., 56. It is clear from our discussion above, however, that those "exceptions" only come into play once it is established that the writing in issue was intended as the "final repository" or "integration," either partial or complete, of the parties' negotiations.

We disagree with the defendants' assertion that because a contract of continuing guaranty remains in force only until revoked by the guarantor, the defendants' attempted payments on the note and Pierre Chagnon's discussions with Fredette revoked the guaranty. A guaranty "contract is continuing if it contemplates a future course of dealing during an indefinite period or it is intended to cover a series of transactions or a succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. An offer for a continuing guaranty is ordinarily effective until revoked by the guarantor or extinguished by some rule of law." *Iola State Bank* v. *Biggs,* 233 Kan. 450, 454, 662 P.2d 563 (1983); 38 Am. Jur. 2d, Guaranty § 63. To revoke a continuing guaranty, the guarantor usually must give notice of the revocation to the creditor. *Gay* v. *Ward,* 67 Conn. 147, 156, 34 A. 1025 (1895). However, "[e]ven a continuing guaranty that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such period of time as is reasonable in light of all the cir-

cumstances of the particular case." *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351, 439 A.2d 362 (1981). The interpretation of a continuing guaranty, as well as the question of its revocation, ordinarily is a question of fact. Id.

In the present case, Fredette told Pierre Chagnon upon receipt of the corporate check for $20,000 in September, 1978, that the money could not be applied to reduce the defendants' personal liability on the underlying debt. There is nothing in the record to indicate that the defendants expressed disagreement with Fredette's position. After the parties' discussion, the defendants' company continued to acquire merchandise from the plaintiff pursuant to the open credit arrangement. In December, 1980, the defendants sent another check for $15,000 bearing the notation that it applied to the installment note. On the basis of all the evidence, including that of the parties' discussion in 1978, however, the trial court could reasonably have found that the notation on the December, 1980 check did not effectuate a revocation. Id. The same holds true for the checks sent in 1985 bearing the notation "without prejudice." Further, aside from the notations on the checks, the record does not disclose that the defendants expressly communicated a desire to revoke their guaranty until Pierre Chagnon told Fredette in late 1986 that the defendants did not consider themselves personally liable.

Finally, the defendants' argument that the trial court improperly "reformed" the installment note because the plaintiff sought only money damages is misleading. In analyzing the facts, the trial court did not purport to "reform" the contract on the basis of mutual mistake or fraud. Cf. *Lopinto* v. *Haines,* 185 Conn. 527, 531, 441 A.2d 151 (1981). Relying on the language of the written agreement, the circumstances surrounding its execution, and the parties' subsequent conduct,

the trial court determined that the " 'installment note' of September 1, 1977, was not a promissory note at all, but rather the *product* of an unprofessional yet honest effort on the part of the plaintiff to insure that it would be paid for materials furnished." (Emphasis added.) As we observed above, this conclusion in essence indicated that the installment note was not an integration of the parties' negotiations. Since the installment note was only the "product" of the underlying guaranty agreement, the trial court was not engaged in "reformation" when it analyzed the surrounding facts to determine precisely the content of the agreement. In light of this evidence, we are unpersuaded that the trial court committed error in determining that the defendants were guarantors on the underlying corporate debt.[3] *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* supra.

## II

The defendants next claim that the trial court erred in rejecting their statute of limitations defense. They argue that under General Statutes § 42a-3-122 (1),[4] the plaintiff's cause of action on the installment note accrued on August 2, 1980, the day after the note matured according to its terms. They claim, therefore, that the plaintiff's action was barred under General

---

[3] In its memorandum of decision, the trial court also concluded that the contract of continuing guaranty was not subject to the statute of frauds under the "main purpose" or "leading object" exception. The plaintiff also presses this point on appeal. The defendants, however, have not argued the applicability of the statute of frauds on appeal. Consequently, that issue is not before us.

[4] General Statutes § 42a-3-122 (1) provides: "A cause of action against a maker or an acceptor accrues (a) in the case of a time instrument on the day after maturity; (b) in the case of a demand instrument upon its date or, if no date is stated, on the date of issue."

Statutes § 52-576[5] because it was brought in November, 1986, more than six years after its cause of action accrued.

The installment note, executed on September 1, 1977, provided that the interest and principal were payable in monthly installments of $1000 plus accrued interest beginning on October 1, 1977. According to the defendants, the full term of the note expired on August 1, 1980, the date the thirty-fifth and final payment was due. The defendants' argument presupposes that the action was brought on the installment note and not on a continuing guaranty. The trial court's findings, however, indicate that the payment terms of the note were not controlling. The trial court found that the plaintiff's invoices did not adhere to the interest rate stated in the installment note, and further, that the parties' conduct evinced an intent to ignore the payment schedule set forth in the note. That the defendants themselves did not adhere to those terms is clear from the acknowledgment in their brief that "[i]t is manifest from this payment scheme . . . that the agreement . . . contemplated termination of the guaranty and release of the Chagnons upon payment of the final $1,000.00 installment in *May, 1981.*" (Emphasis added.)

"In the case of a continuing guaranty, the statute [of limitations] does not commence to run in favor of

---

[5] "[General Statutes] Sec. 52-576. ACTIONS FOR ACCOUNT OR ON SIMPLE OR IMPLIED CONTRACTS. (a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section.

"(b) Any person legally incapable of bringing any such action at the accruing of the right of action may sue at any time within three years after becoming legally capable of bringing the action.

"(c) The provisions of this section shall not apply to actions upon judgments of any court of the United States or of any court of any state within the United States, or to any cause of action governed by article 2 of title 42a."

a guarantor until there is a default in payment by the principal, and a cause of action has accrued against the former." 38 Am. Jur. 2d, Guaranty § 121. In the present case, the defendants' guaranty existed, absent an effective revocation, for "as long as the open account was in existence." *Boxed Beef Distributors, Inc.* v. *Rexton, Inc.*, 7 Conn. App. 555, 560, 509 A.2d 1060 (1986). Hanover's account with the plaintiff was not in default until late. 1986, when Pierre Chagnon informed Fredette that "I don't owe you anything personally and my company may not be able to pay you." Consequently, the plaintiff's action, brought in November, 1986, was not barred by the statute of limitations set forth in § 52-576.[6]

## III

The defendants next claim that the trial court erred in finding them liable for $35,000 on the underlying debt of their corporation without any finding on the corporation's debt to the plaintiff. In its memorandum of decision, the trial court found that "[t]he agreement and the evidence lead conclusively to this court's holding that defendants are liable to plaintiff for the sum of $35,000." While the trial court's memorandum does not make express findings with respect to Hanover's debt, Hanover's aggregate liability for at least $35,000

---

[6] We do not agree with the plaintiff's argument that the applicable statute of limitations in this case is found in General Statutes § 42a-2-725, which establishes a four year limitation period on breach of contracts for the sale of goods. The contract at issue in this case is the continuing guaranty between the parties, and not the underlying open credit account by which the plaintiff sold goods to the defendants' business. Cf. *Carpenter* v. *Thompson*, 66 Conn. 457, 461, 465, 34 A. 105 (1895) (holding that guaranty on promissory note is subject to predecessor to General Statutes § 52-576 pertaining to action on simple contracts); see also *Chatham* v. *Georgia-Pacific Corporation*, 163 Ga. App. 535, 536, 295 S.E.2d 226 (1982) (applying similar statute). Moreover, because the question has not been raised, we have no occasion to consider the applicability of General Statutes § 52-581 (establishing three year limitation period on oral contracts).

arguably is implied by the court's conclusion as to the defendants' liability. There was evidence before the trial court of Hanover's liability in excess of $35,000. In any event, the defendants bore the burden of providing this court with an adequate record for appellate review. Practice Book § 4061.[7] They have not sought an articulation of the trial court's findings with respect to Hanover's debt, or the basis for its failure to make any such finding. Practice Book § 4051.[8] Because the defendants have failed to present us with an adequate record to support the factual underpinnings of their claim, we decline to review it. *McLaughlin* v. *Bronson*, 206 Conn. 267, 277–78, 537 A.2d 1004 (1988).

## IV

The plaintiff on cross appeal argues that the trial court erred in (A) failing to establish a date on which the $35,000 guaranteed amount was due and then to

---

[7] "[Practice Book] Sec. 4061. (Formerly Sec. 3060D). REVIEW BY THE SUPREME COURT

"The supreme court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"If the supreme court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision.

"It is the responsibility of the appellant to provide an adequate record for review."

[8] Practice Book § 4051 provides in relevant part: "Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record or seeking an articulation or further articulation of the decision of the trial court shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper presentation of questions reserved; or the trial court may approve a stipulation of counsel that such a correction or addition be made, provided the motion or stipulation is presented before the appeal is ready to be assigned for hearing and only by leave of the supreme court thereafter."

award the plaintiff interest at the statutory rate until the principal was paid, and (B) failing to award reasonable attorney's fees.

A

The plaintiff claims that the trial court should have determined that the defendants' $35,000 debt to the plaintiff became "fixed" on November 18, 1986, when the plaintiff initiated its action by filing an attachment on the defendants' realty. The plaintiff concedes that the amount collectible on a guaranty is limited to the amount of the guaranty, but argues that once the amount falls due, failure to pay it results in the guarantor's liability for interest on that amount from the date the amount falls due. It asserts, therefore, that beginning on November 18, 1986, it became entitled to interest at the rate of 10 percent under General Statutes (Rev. to 1985) § 37-3a,[9] yielding a total amount of damages of $39,113.12 as of the date the trial court filed its memorandum of decision, January 22, 1988.

Under § 37-3a, an allowance of prejudgment interest turns on " 'whether the detention of the money is or is not wrongful under the circumstances.' *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d

---

[9] "[General Statutes (Rev. to 1985)] Sec. 37-3a. RATE RECOVERABLE AS DAMAGES. Except as provided in sections 37-3b and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable except as otherwise provided with respect to demand obligations in section 42a-3-122 (4) (a). Judgment may be given for the recovery of taxes assessed and paid upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. Whenever the maker of any contract is a resident of another state or the mortgage security is located in another state, any obligee or holder of such contract, residing in this state, may lawfully recover any agreed rate of interest or damages on such contract until it is fully performed, not exceeding the legal rate of interest in the state where such contract purports to have been made or such mortgage security is located."

374 (1971)." *Newington* v. *General Sanitation Service Co.*, 196 Conn. 81, 90, 491 A.2d 363 (1985). Such a fact-bound determination lies within the trial court's discretion. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 482, 542 A.2d 692 (1988); *King* v. *Board of Education*, 203 Conn. 324, 341, 524 A.2d 1131 (1987); *Newington* v. *General Sanitation Service Co.*, supra; *Bertozzi* v. *McCarthy*, 164 Conn. 463, 467, 323 A.2d 553 (1973).

It is obvious from the memorandum of decision that the trial court did not address whether the plaintiff was entitled to interest under § 37-3a from the date the defendants' liability became "fixed." The court's analysis was solely concerned with whether the plaintiff was entitled to interest accruing throughout the term of the guaranty agreement commencing in September, 1977. The court noted that "[i]t was the practice of plaintiff to charge the defendants interest on any outstanding balance not promptly paid," but that the "rate of interest charged varied from less than 1 per cent per month to as high as 1½ per cent per month." It concluded that it was "impossible for this court to find that there was a meeting of the minds that defendants' guaranty extended beyond $35,000.00 to the extent of interest on that amount at 12 per cent per year because that was the rate expressed in the 'installment note.' " Thus, the memorandum of decision demonstrates that at trial the plaintiff sought interest at the rate of 12 percent, as set forth in the installment note, and not ten percent, based on the statutory rate of § 37-3a. Moreover, a simple comparison of the $54,943.86 sought in the complaint with the $39,113.12 asserted on the cross appeal demonstrates that the issue of interest pressed on appeal is not the same as that litigated at trial.

Nothing in the record indicates that the plaintiff distinctly raised at trial the issue now argued on appeal.

Neither the defendants on appeal nor the plaintiff on cross appeal ordered transcripts of the proceedings below. Cf. *Nair* v. *Thaw,* 156 Conn. 445, 455, 242 A.2d 757 (1968). Further, the record does not indicate that the plaintiff sought an articulation of the trial court's decision concerning interest on the judgment of $35,000. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. See Practice Book § 3063 [now § 4185] . . . . Moreover, it is an appellant's burden, utilizing the rules of practice, to ensure that this court is provided with an adequate appellate record. Practice Book § 3082 [now § 4051] . . . . " (Citations omitted.) *Keating* v. *Glass Container Corporation,* 197 Conn. 428, 431, 497 A.2d 763 (1985); Practice Book § 4061. Because an award of prejudgment interest under § 37-3a raises a question of fact which is not evident in the record before us, we decline to review the plaintiff's claim for interest. Practice Book § 4185.

### B

The plaintiff next claims on cross appeal that the trial court erred in failing to allow it reasonable attorney's fees. The plaintiff argues that its right to attorney's fees is expressly provided in the language of the installment note stating that "[i]n the event of default hereunder the undersigned agree to pay all costs of collection including reasonable attorney's fees." It further asserts that our review is not limited to the question whether the trial court's failure to award attorney's fees was clearly erroneous since the memorandum of decision does not at all purport to address the question of attorney's fees.

The record demonstrates that the plaintiff's claim for reasonable attorney's fees was included in its prayer

for relief set forth in the complaint. Thus, the claim for attorney's fees was properly before the trial court. Because the trial court failed to address this claim, we remand the case to the trial court for an articulation of this issue. Practice Book § 4061.

The judgment is affirmed in all respects except on the issue of attorney's fees, on which the case is remanded to the trial court for an articulation in accordance with this opinion.

In this opinion the other justices concurred.