[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The present action arose after the plaintiff, Robert J. Mormile, Jr., voluntarily retired from his position with the defendant, Metropolitan Life Insurance Company. In his amended complaint, the plaintiff alleges that the actions of the defendant with regard to the conditions and terms of his retirement constitute a breach of contract (count one) or, alternatively, that he is entitled to recover based on promissory estoppel (count two). The defendant filed an amended answer alleging six special defenses which the plaintiff has denied. Presently before the court is the defendant's motion for summary judgment.[1]
"Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any CT Page 6413 material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.)Miles v. Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000). A material fact is "a fact that will make a difference in the result of a case."River Dock Pile, Inc. v. Ins. Co. of North America, 57 Conn. App. 227,231, 747 A.2d 1060 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Dubinsky v. CiticorpMortgage, Inc., 48 Conn. App. 52, 55, 70 A.2d 226, cert. denied,244 Conn. 929, 714 A.2d 9 (1998).
The defendant contends that the following facts are undisputed. The plaintiff was employed by the defendant as an account representative in its Yale Agency from 1966 until May, 1997. (Affidavit of Ann Marie Maisano, dated November 2, 2000 [Maisano Affidavit], ¶¶ 4, 9.) In 1996, the defendant enacted specific minimum production requirements for its account representatives. (Maisano Affidavit, ¶ 7.) Despite failing to meet his production requirements, the plaintiff continued his employment with the defendant until his voluntary retirement in May, 1997. (Maisano Affidavit, ¶¶ 8, 9.) While retired, the plaintiff receives pension payments in the amount of $1,321 per month and is authorized to sell and service the defendant's insurance products to members of his family, as authorized by the Form 100 Agreement. (Maisano Affidavit, ¶¶ 10, 21.) In addition, the Form 100 agreement permits the plaintiff to sell insurance issued by the defendant to new customers, thereby earning service and renewal commissions on those sales. (Maisano Supp. Affidavit, ¶ 3.)
Prior to his retirement, the plaintiff claims that he was negotiating with Phillip J. Rogerson, the defendant's agent, to retire pursuant to the company's Form 100 Retirement Plus Agreement (plus agreement). (Maisano Affidavit, ¶¶ 11, 15.) Although discontinued in 1997, the plus agreement had provided that account representatives would be allowed to retain all of their personally written accounts at retirement. (Maisano Affidavit, ¶¶ 11-12.) Plus agreements were discretionary and typically only available to account representatives who were either sixty-five or older or sixty-two or older with twenty years of service and at least $40,000 in annual commissions. (Maisano Affidavit, ¶ 12.) At the time of his retirement, the plaintiff was fifty-seven years CT Page 6414 old; (Defendant's Appendix 1, p. 99); and his commissions were below $40,000 a year. (Maisano Affidavit, ¶ 13.) Furthermore, Rogerson did not have the authority to approve retirement agreements. (Maisano Affidavit, ¶ 16.)
By letter dated February 11, 1997, the plaintiff informed the defendant that he would retire effective May 14, 1997, and requested that he have "the opportunity to work in [his] retirement years as an agent 100." (Maisano Affidavit, ¶ 18.) In May, 1997, the plaintiff signed a Form 100 Agreement, a Form 100 Supplement and a Statement of In-Force to be Retained at Retirement. (Maisano Affidavit, ¶ 20.) On the Statement of In-Force to be Retained at Retirement, the plaintiff checked off the "Form 100 Ret. Retirement Agreement" box, rather than the "Form 100 Ret. Plus Retirement Agreement" box as the retirement plan he was choosing. (Defendant's Exhibit F.)
The plaintiff argues that when he signed his name to the letter dated February 11, 1997, the plaintiff thought, based on what he contends that he was told by Rogerson, that he would receive benefits under the plus agreement. (Defendant's Appendix 1, pp. 84, 90.) Initially, the retirement discussions between the plaintiff and Rogerson focused on the plaintiff receiving the plus agreement. (Plaintiff's Exhibit A, p. 25.) The defendant actually started to transfer the plaintiff's book of business over to him. (Plaintiff's Exhibit A, p. 32.) Rogerson contends that by the beginning of March, he advised the plaintiff that he was not eligible for the plus agreement and, therefore, could not retain his book of business. (Defendant's Appendix 2, pp. 53-55.) The defendant contends the plaintiff did not qualify for the plus agreement because he did not meet the minimum commission requirements of $40,000 per year. (Plaintiff's Exhibit A, p. 37.) Rogerson contends that although the plaintiff was not happy at the time, he understood that he would not receive the plus agreement as his retirement package. (Appendix 2, p. 54.) In addition, Ann Marie Maisano, the agency administrator, contends that as early as February, 1997, she repeatedly discussed with the plaintiff the reasons why he did not qualify for the plus agreement. (Maisano Affidavit, ¶¶ 2, 17.)
The defendant argues that it is entitled to summary judgment because there are no issues of material fact and the plaintiff has failed to set forth a cause of action for either breach of contract or promissory estoppel because the plaintiff knowingly and voluntarily executed a contract that clearly specified the type of insurance business the plaintiff could continue upon his retirement. The defendant also argues that the May, 1997 written contract is a fully integrated document, which supercedes any prior oral agreements and, therefore, the plaintiff is precluded from contradicting its terms because of the parol evidence CT Page 6415 rule. The plaintiff contends that the defendant's motion for summary judgment should be denied because the operative retirement contract was formed in February, 1997. The plaintiff alleges that the May, 1997 document is only an attempted contract modification, the validity of which is an issue of material fact and not appropriate for summary judgment.
The court finds that there are genuine issues of material fact as to both counts of the plaintiff's complaint and, therefore, summary judgment is inappropriate. Regarding the breach of contract claim, there is an issue of material fact regarding whether the February, 1997 negotiations constitute an oral contract. "The existence of a contract is, at least initially, a question of fact." (Internal quotation marks omitted.)Simmons v. Simmons, 244 Conn. 158, 187, 708 A.2d 949 (1998). If the February negotiations constitute an oral contract, the trier of fact must determine whether the written May agreement is a modification of the February agreement; Three S. Development Co. v. Santore, 193 Conn. 174,177-78, 474 A.2d 795 (1984); or is a separate, integrated contract, which supercedes the February contract. Associated Catalog Merchandisers, Inc.v. Chagnon, 210 Conn. 734, 740, 557 A.2d 525 (1989). "Whether the written contract was actually the final repository of the oral agreements and dealings between the parties depends on their intention, evidence as to which is sought in the conduct and language of the parties and the surrounding circumstances." (Internal quotation marks omitted.) Id., 739. Further, to the extent that evidence of the February, 1997 negotiations is relevant to the issue of their intention, the parol evidence rule does not bar its admission.[2] Id., 740. "Whether the parties intended to integrate their negotiations in a writing is a question of fact"; id.; and, likewise, "[w]hether the parties intended to modify their contract is a question of fact." Three S. Development Co.v. Santore, supra, 177-78. Because the evidence is conflicting regarding the parties' intent, an issue of material fact, summary judgment is inappropriate as to count one.
With regard to the second count, "under the doctrine of promissory estoppel, [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Internal quotation marks omitted.) Wellington Systems, Inc. v. Redding Group, Inc.,49 Conn. App. 152, 162, 714 A.2d 21, cert. denied, 247 Conn. 905,720 A.2d 516 (1998). "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in CT Page 6416 reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) Id.
The plaintiff has met its burden in opposing summary judgment of establishing disputed issues of material fact regarding his promissory estoppel claim by submitting evidence as to both elements of this claim. First, the plaintiff has submitted evidence that promises were made to him in February, 1997, that he could retire with the right to keep his book of business. Second, the plaintiff has submitted evidence that in reliance on such promises he changed his position to his detriment. Specifically, the plaintiff would not have elected to retire had he not been allowed to keep his book of business. Further, in electing to retire and in anticipation thereof, the plaintiff ceased efforts to solicit new business and meet production goals. Therefore, because issues of material fact exist concerning the promises allegedly made to the plaintiff in February, 1997, and his reasonable reliance thereon, summary judgment is inappropriate as to count two.
Accordingly, the defendant's motion for summary judgment is denied.
Peck, J.