JSA FINANCIAL CORPORATION *v.* QUALITY
KITCHEN CORPORATION OF
DELAWARE ET AL.
(AC 29045)

Flynn, C. J., and DiPentima and Peters, Js.

Argued October 29, 2008—officially released March 3, 2009

*Peter C. Hunt,* for the appellant (defendant Albert J. Salame).

*Robert J. Caffrey,* for the appellee (plaintiff).

DiPENTIMA, J. The defendant Albert J. Salame appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, JSA Financial Corporation. On appeal, the defendant claims that the court improperly concluded that (1) his obligations pursuant to a guarantee contract were extended by a partial payment made by the debtor, Quality Kitchen Corporation of Delaware (Quality Kitchen),[1] and (2) he had abandoned the claim for an accounting. We disagree with both of the defendant's claims and, accordingly, affirm the judgment of the trial court.

The parties submitted a joint stipulation of facts. On July 18, 1989, Quality Kitchen executed a note for a line of credit in favor of UST/Bank Connecticut (UST Bank) in the original principal amount not to exceed $150,000.[2] The terms of the note provided that it was payable with interest on demand but not later than July 18, 1990. On July 18, 1989, the defendant executed a contract in which he guaranteed repayment and performance of the note.[3] The plaintiff subsequently became the holder of the note. Quality Kitchen admitted liability on the note but disputed the amount owed. The defendant, however, challenged the plaintiff's claim that he was liable under the guarantee.

On July 13, 2007, the court issued a memorandum of decision, setting forth the following factual findings and legal conclusions. The plaintiff commenced the present

---

[1] Quality Kitchen is not involved in this appeal. We therefore refer to Salame as the defendant.

[2] We note that the joint stipulation of facts filed with the court states that the parties established the line of credit on June 18, 1989. The note itself, however, is dated July 18, 1989, and there is no dispute as to when the line of credit was established. We attribute the date used in the joint stipulation of facts as nothing more than a scrivener's error.

[3] The defendant also agreed to pay all costs of collection and reasonable attorney's fees.

action on July 2, 2002, and a payment of $560.86 made by Quality Kitchen on or about November 19, 1996, tolled the statute of limitations as to Quality Kitchen. Additionally, the court determined that the terms of the guarantee contract obligated the defendant to repay the outstanding balance on the note. The court also rejected the special defense set forth by Quality Kitchen and the defendant that the note had been paid. The court rendered judgment in favor of the plaintiff against both Quality Kitchen and the defendant for the principal sum of $68,217.13, interest in the amount of $38,891.20 until March 8, 2007,[4] with per diem interest of $10.90 and attorney's fees in the amount of $30,000. This appeal followed.

I

The defendant first claims that the court improperly concluded that his obligations pursuant to the guarantee contract were extended by a partial payment made by Quality Kitchen. Specifically, he argues that the court never made a finding that he was aware of or consented to the acknowledgment of the debt and that absent this finding, it was improper to conclude that the statute of limitations had been tolled. We are not persuaded that such a finding was required in light of the terms of the guarantee contract. We therefore reject this claim.

The terms of the note for the line of credit stated that all amounts due were payable no later than July 18, 1990. The plaintiff did not commence the present action until July 1, 2002. Generally, there is a six year statute of limitations for bringing an action for nonpayment on a note. See General Statutes § 42a-3-118. The court found, however, that Quality Kitchen had sent a payment for interest on the note by way of a check dated November 19, 1996, in the amount of $560.86.

---

[4] The plaintiff's posttrial brief was dated March 8, 2007.

The letter sent with the check indicated that the defendant also had received notice of this payment. Relying on *Zapolsky* v. *Sacks*, 191 Conn. 194, 198, 464 A.2d 30 (1983), the court found that this partial payment tolled the statute of limitations and rejected that special defense.

"The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. . . . *Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact.* . . .

"A general acknowledgment of an indebtedness may be sufficient to remove the bar of the statute. The governing principle is this: The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. . . . But an implication of a promise to pay cannot arise if it appears that although the debt was directly acknowledged, this acknowledgment was accompanied by expressions which showed that the defendant did not intend to pay it, and did not intend to deprive himself of the right to rely on the Statute of Limitations." (Emphasis in original; internal quotation marks omitted.) *Gianetti* v. *United Healthcare*, 99 Conn. App. 136, 144, 912 A.2d 1093 (2007); see also *Zapolsky* v. *Sacks*, supra, 191 Conn. 198–99.

The defendant does not challenge the court's finding that the November 19, 1996 payment tolled the statute of limitations as to Quality Kitchen. His claim on appeal is that the court failed to find that he was aware of or

consented to this partial payment, and, therefore, the statute of limitations provided a valid defense as to his guarantee contract. We disagree.

"A guaranty is merely a species of contract." *Garofalo* v. *Squillante*, 60 Conn. App. 687, 694, 760 A.2d 1271 (2000), cert. denied, 255 Conn. 929, 767 A.2d 101 (2001). We have explained that "a guarantee is a promise to answer for the debt, default or miscarriage of another. . . . The contract of guarantee is no doubt an agreement separate and distinct from the contract between the lender and the borrower." (Citations omitted.) *Regency Savings Bank* v. *Westmark Partners*, 59 Conn. App. 160, 164, 756 A.2d 299 (2000); see also 38 Am. Jur. 2d 873, Guaranty § 2 (1999). The plaintiff's breach of contract action against the defendant carried a six year statute of limitations after the right of action accrued.[5] *Pelletier* v. *Galske*, 105 Conn. App. 77, 80 n.1, 936 A.2d 689 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1100 (2008); see also General Statutes § 52-576. To determine whether the action was commenced timely, we must examine the language of the guarantee contract.

The guarantee contract provides in relevant part that "[the defendant] further guarantee[s] the punctual payment of all interest payable to said bank on account of said advancements or the instruments representing the same, and all legal and other expenses of collection; and the [defendant] hereby authorize[s] that *said bank* at any time and in such manner and upon such terms as it may see fit to *extend the time for payment* or to change the manner or terms of payment, or to accept

---

[5] We note that "[i]n the case of a continuing guaranty, the statute [of limitations] does not commence to run in favor of a guarantor until there is a default in payment by the principal, and a cause of action has accrued against the former." (Internal quotation marks omitted.) *Associated Catalog Merchandisers, Inc.* v. *Chagnon*, 210 Conn. 734, 745–46, 557 A.2d 525, on appeal after remand, 212 Conn. 322, 561 A.2d 436 (1989).

renewals for or different evidences of indebtedness for any such advances as have been made or may hereafter be made to [Quality Kitchens] without any notice to the [defendant], and *the [defendant] further agree[s] that such extension of time or the change in the manner or terms of payment or acceptance of renewals or different evidences of indebtedness shall not in any way release the [defendant] from or reduce [his] liability on this guarantee.*" (Emphasis added.) The contract further stated that it was a "continuing guarantee" and would "remain in full force and effect until written notice shall have actually been received by said bank that it has been revoked by the [defendant] . . . but such revocation shall not release the [defendant] . . . from any liability for any advances prior to the . . . revocation . . . ."

The court found that the language in the guarantee permitted the plaintiff to alter the time, manner and terms of repayment without notice to the defendant. As a result of this broad language, the court rejected the defendant's claim that the statute of limitations had expired on July 18, 1996, six years after the maturity date of the note. We conclude that the court properly rejected the defendant's statute of limitations defense.

We begin by setting forth the appropriate standard of review. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . A court will not torture words to import ambiguity when the ordinary meaning leaves no room for ambiguity, and words do

not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *General Electric Capital Corp.* v. *Transport Logistics Corp.*, 94 Conn. App. 541, 545, 893 A.2d 467 (2006); see also *WE 470 Murdock, LLC* v. *Cosmos Real Estate, LLC*, 109 Conn. App. 605, 608–609, 952 A.2d 106, cert. denied, 289 Conn. 938, 958 A.2d 1248 (2008). In our view, the terms of the guarantee contract are clear and unambiguous.[6] Specifically, we conclude that UST Bank and its successors were free to modify the terms of the repayment of the line of credit without the consent of the defendant and that such modification would not impact the defendant's obligations. The interpretation of this contract, therefore, presents a question of law, subject to the plenary standard of review.

The defendant is correct that as a general rule, a payment made by the maker of a note that tolls the statute of limitations is ineffective as to a guarantor when the payment is made without the guarantor's knowledge, authorization or consent. See *Broadway Bank & Trust Co.* v. *Longley*, 116 Conn. 557, 562–65, 165 A. 800 (1933); see generally *Apuzzo* v. *Hoer*, 125 Conn. 196, 199–200, 4 A.2d 424 (1939). In the present case, however, the terms of the guarantee contract provided that the holder of the note, the plaintiff and its predecessors, could modify the terms of repayment of the note without the consent or knowledge of the defendant and that such modifications would not in any way release or reduce his liability. It is established that "[s]pecific contractual terms and intent, as opposed to general statements of law, control any agreement." 38 Am. Jur. 2d 924, supra, § 65. Just as a guarantor, pursuant to the terms of the guarantee contract, may expressly limit his liability so as to exclude the costs of collection; see *Boxed Beef Distributors, Inc.* v. *Rexton,*

---

[6] We note that the defendant acknowledged in his brief that the terms of the guarantee were clear and unambiguous.

*Inc.*, 7 Conn. App. 555, 560, 509 A.2d 1060 (1986); a guarantor also may alter the terms of such a contract to provide the creditor with certain benefits.

We conclude that the court properly interpreted the guarantee contract and concluded that the plaintiff was free to modify the terms of the repayment of the line of credit. The express terms of that contract provide that any such modifications would not "in any way release the [defendant] from or reduce [his] liability on this guarantee." As such, the court was not required to make a finding that the defendant was aware of the partial payment that tolled the statute of limitations as to the underlying negotiable instrument. The defendant expressly consented to the terms of the guarantee contract that permitted the plaintiff and its predecessors to change the repayment terms of the note and agreed that the guarantee would remain in full force and effect until the defendant revoked it.[7] We will not allow the defendant to receive the benefit of his bargain but escape its risks when they arise. See *Regency Savings Bank* v. *Westmark Partners*, supra, 59 Conn. App. 167. Accordingly, we reject the defendant's claim to the contrary.

## II

The defendant next claims that the court improperly concluded that he had abandoned his claim for an accounting. Specifically, he argues that he set forth a counterclaim and a special defense seeking an accounting to determine whether the note in fact had been

---

[7] We are mindful that a continuing guarantee "imposes liability upon a guarantor only for such period of time as is reasonable in light of all the circumstances of the particular case." (Internal quotation marks omitted.) *Associated Catalog Merchandisers, Inc.* v. *Chagnon*, 210 Conn. 734, 742–43, 557 A.2d 525, on appeal after remand, 212 Conn. 322, 561 A.2d 436 (1989). Implicit in the court's finding that the guarantee contract remained in effect is a determination of reasonableness.

repaid and that the court failed to consider these claims. We disagree.

The following additional facts are necessary for the resolution of the defendant's claim. UST Bank and Quality Kitchen entered into a agreement under which UST Bank would receive funds in a "lock box." The court found that the funds received pursuant to this agreement would be deposited in two accounts, neither of which was the line of credit at issue in the present case. The lock box agreement did state that interest due to UST Bank from the line of credit "can, if you wish, be simultaneously automatically debited to [that] account." The court found that this agreement was not intended to be a source of principal reduction. It further found the funds from the lock box did not repay the line of credit.

A

The defendant first argues that the court failed to consider the counterclaim seeking an accounting. On November 7, 2002, the defendant and Quality Kitchen filed an amended answer, special defenses and a counterclaim. The first counterclaim alleged that he and Quality Kitchen had made payments on the note and that an accounting was necessary to show the amount due, if any, to the plaintiff. On February 7, 2003, the defendant and Quality Kitchen revised, inter alia, the first counterclaim. On September 7, 2004, however, the defendant and Quality Kitchen filed a withdrawal of the counterclaim seeking an accounting.

"Construction of the effect of pleadings is a question of law and, as such, our review is plenary. . . . Pleadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise. . . . [The] purpose of pleadings is to frame, present, define, and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted

on the trial . . . ." (Internal quotation marks omitted.) *Young* v. *Vlahos*, 103 Conn. App. 470, 476, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008); see also *Kucej* v. *Town Clerk*, 40 Conn. App. 692, 696, 673 A.2d 578 (1996). By withdrawing the counterclaim seeking an accounting, the defendant removed that issue from the case and cannot now claim that the court improperly failed to give it consideration. See *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 804 n.1, 882 A.2d 715 ("[t]he [trial] court is not permitted to decide issues outside of those raised in the pleadings" [internal quotation marks omitted]), cert. denied, 276 Conn. 932, 890 A.2d 572 (2005); *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, 59 Conn. App. 194, 200, 756 A.2d 309 (2000) (same). Accordingly, we conclude that the defendant's claim that the court improperly failed to consider the counterclaim seeking an accounting is without merit.

B

The defendant also argues that the court failed to consider the special defense seeking an accounting to show that the note had been repaid. Specifically, he contends that as a result of the court's statement in its decision that it had addressed "the issues raised by the defendants' posttrial brief dated March 23, 2007, and assumes that any other claims raised in the pleadings (if any) are abandoned," the court improperly failed to address this issue in its decision. We disagree.

The defendant's argument requires that we interpret the court's written decision. "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole.

. . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Citation omitted; internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 773–74, 890 A.2d 645 (2006); see also *Perugini* v. *Devino*, 111 Conn. App. 436, 444, 959 A.2d 1031 (2008).

The special defenses alleged that the defendant and Quality Kitchen had paid the debt created by the note in full or, in the alternative, that payments made had partially satisfied the amount owed. The court's decision indicated that it had considered and rejected the claim that payments made via the lock box agreement had repaid the obligation under the note. It further found that it was not credible for the defendant to believe that the principal balance had been repaid from a source other than the lock box. We therefore conclude that the court did not fail to consider the special defenses.

The judgment is affirmed.

In this opinion the other judges concurred.