******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JACK AJLUNI *v.* STEVE SUDHIR CHAINANI
(AC 39649)

Alvord, Keller and Bishop, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia, breach of his guaranty obligation to the plaintiff in connection with a promissory note executed between the plaintiff and C Co., which was secured by the defendant's written personal guaranty of payment of all of C Co.'s obligations under the note. Following C Co.'s default on the note, the plaintiff commenced an action against the defendant in California on the guaranty. Thereafter, the California court rendered a default judgment in favor of the plaintiff. The plaintiff subsequently commenced the present action, alleging, inter alia, nonpayment of the California judgment and breach of contract related to nonpayment of the guaranty. The defendant alleged as a special defense that the action was barred by the six year statute of limitations (§ 52-576) applicable to breach of contract actions. The trial court rendered judgment in favor of the plaintiff on his breach of contract claim, concluding that the claim was not barred by the statute of limitations because the defendant repeatedly reaffirmed the existence of the debt owed to the plaintiff, thereby tolling the limitation period. In reaching its conclusion, the court relied on statements that the defendant had made to the plaintiff in several e-mails that he had sent to the plaintiff. The defendant had signed the e-mails personally and did not reference C Co., nor did he indicate that he was signing them on behalf of C Co. or in his capacity as its managing member. On the defendant's appeal to this court, *held* that the trial court's finding that the defendant reaffirmed the existence of the subject debt was not clearly erroneous, as there was adequate evidence in the record supporting that court's finding of reaffirmation and the defendant failed to provide any evidence or authority that left this court with a definite and firm conviction that the trial court committed a mistake; the statements the defendant made in the e-mails to the plaintiff unequivocally acknowledged that he owed a debt to the plaintiff, and he never expressed an intention not to pay the debt but, instead, reassured the plaintiff that it was his full intention to repay the plaintiff as soon as possible, and, therefore, the trial court properly determined that there was nothing equivocal about the defendant's reaffirmation of the existence of the subject debt.

Argued February 20—officially released September 11, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Povodator, J.*; judgment in part for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Roy W. Moss*, for the appellant (defendant).

*Benjamin M. Wattenmaker*, with whom, on the brief, was *John M. Wolfson*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Steve Sudhir Chainani, appeals from the judgment of the trial court, in which it concluded that he breached his guaranty obligation to the plaintiff, Jack Ajluni. On appeal, the defendant claims that the court improperly determined that the applicable statute of limitations did not bar the action because (1) the relation back doctrine applied to the plaintiff's claim and (2) certain communications between the plaintiff and the defendant reaffirmed the debt so as to toll the statute of limitations on the plaintiff's claim.[1] We conclude that certain e-mails exchanged between the parties reaffirmed the debt and, accordingly, affirm the judgment of the trial court.[2]

The court's memorandum of decision details the relevant facts and procedural history. "On or about August 13, 2008, the plaintiff loaned Chainani Associates, LLC (Chainani Associates) . . . a Connecticut limited liability company, the sum of $200,000, as evidenced by the [Chainani Associates'] Secured Promissory Note . . . in said principal amount. . . . The note was secured by a [mortgage] of the same date executed by the borrower on the borrower's real property in Stamford, Connecticut . . . . To further secure the note, the [d]efendant executed a written personal guaranty . . . of payment of all obligations of the borrower under the note. . . . [T]he maturity date of the note was November 11, 2008. . . .

"The mortgaged property was part of the borrower's adjacent properties on Summer Street consisting of two low rise office buildings that the borrower intended to redevelop with a residential tower. The loan served to finance legal, engineering, and other expenses incurred in connection with obtaining certain significant zoning and other approvals required for the project. However, by November, 2008, although the borrower had succeeded, at least in part, in obtaining approvals, the market crashed and ultimately a senior mortgage lender foreclosed on the property.

"No payment has been made on the note or pursuant to the Guaranty. On or about July 19, 2010, in the Superior Court of the state of California, county of San Mateo, the plaintiff filed an action, CIV 497018 (California action) against the defendant on the guaranty. On or about July 26, 2010, service of the California summons and complaint was made upon the defendant at his residence in New Canaan, Connecticut. The defendant did not appear in the California action. Consequently, thereafter, on motion of the plaintiff, on or about October 12, 2010, a default judgment was entered in the California action in favor of the plaintiff in the amount of $304,086.52. . . .

"[This] action was commenced in February, 2014, the single count alleging nonpayment of the California

judgment and seeking to domesticate [that judgment].

"On November 18, 2014, the plaintiff filed a proposed amended complaint . . . that added additional counts for breach of contract (count two), breach of the duty of good faith and fair dealing (count three), and unjust enrichment (count four). These additional counts allege nonpayment of the guaranty.

"In January of 2015, the plaintiff attempted to amend his complaint further, seeking to add counts alleging misrepresentation and fraud; an objection to that proposed amended complaint was sustained.

"In his answers to the various iterations of the complaint, in addition to denying material facts, the defendant asserted the lack of jurisdiction of the California court to render judgment against him, and further has alleged defenses of laches and the statute of limitations [pursuant to General Statutes § 52-576 (a)[3]] (as appropriate). The plaintiff responds by contending that the California court could assert personal jurisdiction both because the defendant had a sufficient general presence in California and because this transaction had sufficiently precise roots in California. [The plaintiff] further claims that the statute of limitations is inapplicable both because of relation back and because of the defendant's reaffirmation of the debt. He also claims that on the merits, he is entitled to recover on all of his claims.

"An evidentiary hearing took place on February 4, 2016. Both sides filed memoranda before and after the hearing." (Citation omitted; footnote added; internal quotation marks omitted.)

The court ruled in favor of the defendant on counts one, three, and four, but ruled in favor of the plaintiff on count two. Regarding count two, the court stated, inter alia, that "it is well established in Connecticut that a reaffirmation of the existence of a debt is sufficient to reset the statute of limitations." (Internal quotation marks omitted.) The court continued: "As reflected in e-mails submitted into evidence (and the plaintiff repeatedly referred to them in connection with the jurisdictional aspect of the case), on more than one occasion within [six] years of the assertion of the direct guaranty claim in the amended complaint of November 18, 2014 . . . the defendant acknowledged the existence of the debt and expressed his intention to pay the money back (at least the principal), if and when he could—well into 2010. While an equivocal statement might be insufficient to interrupt/reset the running of the statute of limitations, there was nothing equivocal about the reaffirmation of the existence of the debt; the defendant merely hedged on if and when he would be *able* to repay it. The court does not believe that that is sufficient uncertainty to preclude operation of the legal principle; there was no equivocation with respect to the *existence* of the obligation. The defendant repeatedly reaffirmed the

debt, with sufficient certainty to preclude reliance on the statute of limitations. Accordingly, the court does not find the contract claim barred by the statute of limitations." (Citation omitted; emphasis in original.)

The court then rendered judgment in favor of the plaintiff on his breach of contract claim, and awarded the plaintiff damages of $609,994.67 with per diem interest of $141.33. This appeal followed.

On appeal, the defendant claims that the court erroneously concluded that he sufficiently acknowledged the existence of the debt so as to toll the statute of limitations on the plaintiff's claim. The plaintiff responds that certain e-mails exchanged between him and the defendant reaffirmed the debt and tolled the statute of limitations. We agree with the plaintiff.

"The statute of limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. . . . Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. . . .

"A general acknowledgment of an indebtedness may be sufficient to remove the bar of the statute. The governing principle is this: The determination of whether a sufficient acknowledgment has been made depends upon proof that a defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. . . . But an implication of a promise to pay cannot arise if it appears that although the debt was directly acknowledged, this acknowledgment was accompanied by expressions which showed the defendant did not intend to pay it, and did not intend to deprive himself of the right to rely on the Statute of Limitations . . . . [A] general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion. . . .

"We review the trial court's finding . . . under a clearly erroneous standard. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.)

*Zatakia* v. *Ecoair Corp.*, 128 Conn. App. 362, 369–70, 18 A.3d 604, cert. denied, 301 Conn. 936, 23 A.3d 729 (2011).

In reaching its conclusion that the defendant reaffirmed the existence of the debt owed to the plaintiff, the court relied on statements that the defendant made to the plaintiff in several e-mails they exchanged. For example, in an e-mail dated June 16, 2009, the defendant stated: "[*I*]*t is my full intention to get you paid as soon as possible* and our entire team is fully focused on getting the project financed or sold." (Emphasis added.) In an e-mail dated October 11, 2009, the defendant stated: "I do understand that in recent times we have all lost large amounts of money—both you and myself have lost on a multiplicity of investments. However, in view of our personal friendship and on many levels, *it is my endeavor and intent to at least get you your principal back as soon as I possibly can.*" (Emphasis added.) In an e-mail dated May 10, 2010, the defendant stated: "Even though you are foreclosed out, *it is fully our intention to at least get you your full principal back as soon as possible.*" (Emphasis added.) The defendant signed each of these e-mails as "Sudhir" and did not reference Chainani Associates, nor indicate that he was signing the e-mails on behalf of Chainani Associates or in his capacity as managing member of Chainani Associates.[4]

On the basis of the evidence cited by the trial court, including the evidence highlighted in the preceding paragraph, we conclude that there was adequate evidence in the record from which the court could determine that the defendant reaffirmed the existence of the debt. The statements that the defendant made in the e-mails to the plaintiff unequivocally acknowledged that he owed a debt to the plaintiff. Moreover, in these communications, the defendant never expressed an intention not to pay the debt. To the contrary, the defendant reassured that it was his "full intention" to payback the plaintiff as soon as possible. We thus agree with the court's determination that "there was nothing equivocal about the reaffirmation of the existence of the debt; the defendant merely hedged on if and when he would be *able* to repay it." (Emphasis in original.)

The defendant has not pointed to any evidence or authority from which we could conclude that the court's finding of reaffirmation was clearly erroneous. See footnote 1 of this opinion. Indeed, the defendant's analysis of this issue in his appellate brief is limited to three conclusory sentences and a citation to *Dwyer* v. *Harris*, 128 Conn. 397, 23 A.2d 147 (1941), which is not on point.[5] Because we have found evidence in the record supporting the court's finding of reaffirmation, and because the defendant has not provided any evidence or authority that has left us with the definite and firm conviction that the court made a mistake, we conclude that the court properly found that the defendant reaf-

firmed the debt, thereby tolling the applicable statute of limitations.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At the outset, we note that "[i]t is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of the trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014). As noted by the plaintiff, the defendant's analyses are primarily conclusory assertions that contain no citations to the record or application of relevant authority to the facts of this case. Despite the borderline inadequacy of the defendant's brief, however, we were able to discern the defendant's arguments and, therefore, consider the merits of his claim.

[2] Because we conclude that the trial court properly determined that the defendant's reaffirmation of the obligation tolled the statute of limitations, we need not address the court's alternative basis for concluding that the statute of limitations did not bar the action, that the relation back doctrine applies to the plaintiff's claim.

[3] General Statutes § 52-576 (a) provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

[4] We also note that in nearly every e-mail that the plaintiff sent to the defendant, the plaintiff asserted the existence of the debt, and the defendant did not contradict any of those assertions. See *Zatakia* v. *Ecoair Corp.*, supra, 128 Conn. App. 370 ("[a] general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion" [internal quotation marks omitted]).

[5] The entirety of the defendant's analysis provides: "[T]he communications appear to involve *not the guaranty obligation* but the debt owed under the note by the primary obligor, Chainani Associates . . . under its mortgage note to the plaintiff. The implication of an acknowledgment by the defendant of a debt owed by [Chainani Associates] could not itself constitute a reaffirmation of [the] defendant's separate and distinct guaranty obligation. See *Dwyer* v. *Harris*, [supra] 128 Conn. 397 (1941) ([d]efendant's offer to assist in collection of debt from others not reaffirmation of debt owed by defendant). It was therefore error as a matter of law for the court to conclude that the communications constituted a reaffirmation of the debt claimed under the guaranty, such as to reset the limitations period." (Emphasis in original.)

The defendant has not directed us to any portion of the record that establishes that the e-mails exchanged between the plaintiff and the defendant involved only [Chainani Associates'] note and not the defendant's personal guaranty.

Additionally, the defendant's reliance on *Dwyer* is misplaced. In *Dwyer*, our Supreme Court held: "The trial court should have told the jury that if they found the evidence established the defendant's claim that his promise was not to pay the debt created by the note but to assist in collecting from others the money paid . . . such promise did not remove the bar of the Statute of Limitations." Id., 400. The present case is distinguishable because, here, the defendant has not promised to assist the plaintiff in collecting the debt from Chainani Associates. Rather, the defendant personally guaranteed to pay the obligation to the plaintiff should Chainani Associates fail to repay the plaintiff in full. See *JSA Financial Corp.* v. *Quality Kitchen Corp. of Delaware*, 113 Conn. App. 52, 57, 964 A.2d 584 (2009) ("[w]e have explained that a guarantee is a promise to answer for the debt, default, or miscarriage of another" [internal quotation marks omitted]). In other words, the defendant has not made a promise to *assist in collecting the debt*, he has made a promise to *pay the debt*. Accordingly, in this case, unlike in *Dwyer*, the defendant's acknowledgments of the debt in the various e-mails could be—

and were—sufficient to toll the six year statute of limitations.

———————————————————————